MR. JUSTICE HARRISON
delivered the opinion of the Court.
Defendant-appellant was arrested on the charge of deliberate homicide on June 14, 1977, after police had obtained a confession, the product of several interrogations. Appellant thereafter moved to suppress the confession because it was involuntary. The District Court, however, found the confession voluntary, denied the motion and set trial in the matter. Appellant was convicted of the charge and sentenced to forty years in the Montana state prison. From this conviction he appeals.
At approximately 9:00 p.m. on Saturday, June 11, 1977, police found the body of Ann Thibodeau in the Clark Fork River near the downtown area of Missoula, Montana. Ms. Thibodeau had apparently been strangled and thrown into the river, her death resulting from strangulation aggravated by the ingestion of water into the lungs. On investigation police learned that Ms. Thibodeau spent the evening of June 10, 1977, with appellant and several other young people. During the evening, they drove around Missoula in appellant’s car, stopping at various times to pick up some hidden beer, to “park,” and to check on some parties.
*473 As the night progressed, appellant took his passengers home, dropping off the last one except Ann Thibodeau shortly before midnight. At trial, as well as when first interviewed by the police, appellant testified he then took Ms. Thibodeau home. In a confession made to Missoula police, however, appellant stated he and Ms. Thibodeau parked by a bridge near the Clark Fork River after dropping off the last of their companions. Appellant said he became angry with Ms. Thibodeau for being unfaithful to his brother, whom she had been dating, and suddenly strangled her. Thinking she was dead, he dragged her from his car and slid her off the bridge into the river.
Officers questioned appellant concerning Ms. Thibodeau’s death on four occasions: Saturday, June 11, at 11:00 p.m. for approximately one and one-half hours; Sunday, June 12, at 9:30 a.m. for approximately two and one-half hours; Monday, June 13, at 10:00 p.m. for approximately two hours; and Tuesday, June 14, at 12:10 a.m. for approximately one and one-half hours. In addition to these interrogations, appellant consented to a search of his car and a polygraph examination. Officers conducted the car search after the first interrogation at approximately 1:00 a.m. on Sunday, June 12. The search revealed appellant’s car had been recently cleaned. The polygraph examination was conducted on Monday, June 13, between the second and third questioning sessions. The examination indicated some untruthfulness in appellant’s prior statements. Appellant confessed during the third interview. The fourth interview consisted of a taping of essentially the same confession.
Prior to each interview, appellant was advised of his rights and signed waivers respecting his rights. During the interviews, pictures of the nude body of the victim were exposed on the table of the interrogation room. The interviews were conducted with only appellant and the interviewing officers present in the room. Members of appellant’s family were present in the hall outside the interview room. Appellant was not confined between interviews.
Appellant was 18 years of age at the time of the interviews. At the suppression hearing, two expert witnesses testified appellant *474 had a learning disability and probably could not understand his rights as presented on the waiver forms used by the police. There was additional testimony that appellant had an IQ of 94, had completed the eighth grade, had passed most of the high school equivalency exam, had taken vo-tech classes in Butte, and had worked in his father’s business.
Discrepancies exist as to whether appellant made a request for counsel. It is agreed that appellant brought up the subject of counsel during at least one of the questioning sessions. The testimony conflicts, however, as to when appellant mentioned an attorney, what appellant said about wanting an attorney, and the conduct of the interviewers and appellant after the mentioning of counsel.
Appellant states he requested counsel and one was not provided. One of the officers questioning appellant recalled that appellant asked him if he thought he should talk with a lawyer and the officer responded that it was up to appellant. Both questioning officers agree that appellant voluntarily resumed the interview after the mentioning of counsel. No counsel was provided for the appellant during the interrogation process.
On Wednesday, June 15, 1977, appellant called police officers and family members to the Missoula County jail where he was being held and repudiated the statements he had made on the 13th and 14th, stating he saw someone else murder Ms. Thibodeau. At the suppression hearing and trial, appellant withdrew this repudiation and returned to his original story of dropping off the victim at her home about midnight.
Appellant raises three issues on appeal:
1. Did the District Court err in failing to grant the motion to suppress appellant’s confession?
2. Does section 46-13-310(4), MCA, requiring a defendant on a motion to suppress to prove that a confession was involuntary, constitute a denial of due process in violation of the United States and Montana Constitutions?
*475 3. Did the State present sufficient evidence during the trial to support a guilty verdict on the charge of deliberate homicide?
To resolve the first issue presented here, we must decide if the District Court erred in finding appellant’s confession voluntary and if appellant was unconstitutionally denied his right to counsel. To determine the first aspect of this issue, the voluntariness of the confession, we must consider the “totality of circumstances” surrounding the confession with no single fact being dispositive of the issue. State v. Grimestad (1979), . . . Mont. . . ., 598 P.2d 198, 202, 36 St.Rep. 1245, 1251; State v. Lenon (1977), 174 Mont. 264, 570 P.2d 901, 906. When, as here, a youthful defendant questions the voluntariness of a confession, the circumstances the Court must consider include:
. . 1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used in interrogation; 7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated .an extra judicial statement at a later date . ..” Westv. United States (5th Cir. 1968), 399 F.2d 467, 469, cert. denied, 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795.
We should also consider the mental capacity of the defendant, Smallwood v. Warden, Maryland Penitentiary (4th Cir. 1966), 367 F.2d 945, cert. denied, 386 U.S. 1022, 87 S.Ct. 1374, 18 L.Ed.2d 460; the visibility of nude pictures of a murder victim during the defendant’s interrogation, People v. Roberts (1966), 3 Mich.App. 605, 143 N.W.2d 182, 185; the use of polygraph examinations, Keiper v. Cupp (9th Cir. 1975), 509 F.2d 238, 241; a defendant’s previous experience with the criminal justice system, United States v. Glasgow (9th Cir. 1971), 451 F.2d 557, 558; and, a defendant’s experience in the adult world, United States v. Hilliker (9th Cir. *476 1970), 436 F.2d 101, 102-03, cert. denied, 401 U.S. 958, 91 S.Ct. 987, 28 L.Ed.2d 242 and West v. United States, supra. These are all factors courts have taken into account in deciding if a young person voluntarily confessed.
One additional rule aids us in deciding this case. We stated in Grimestad:
“. . . The issue of voluntariness of a confession is largely a factual determination, addressed to the discretion of the trial court... The trial court’s judgment as to voluntariness of a confession will not be reversed on appeal unless it is clearly against the weight of the evidence.” 598 P.2d at 202, quoted from State v. Lenon, 570 P.2d at 906.
The trial court here reviewed the evidence and determined appellant voluntarily confessed. In considering almost every one of the factors listed above as relevant in determining the voluntariness of appellant’s confession, evidence exists supporting the holding of the District Court.
Appellant was 18, legally an adult. He had passed most of his high school equivalency examination and attended vo-tech school. Appellant’s IQ is 94, within the normal adult range. The trial judge found that appellant demonstrated an understanding of the English language during his courtroom testimony. Appellant had worked in his father’s business. Appellant had prior experience with the criminal justice system, having previously been advised of his rights in connection with juvenile matters. The four interrogation sessions lasted only about two hours each and were spread out over several days. Between sessions, appellant went home, free to consult with family members and move about as he pleased. The District Court found that the polygraph procedure did not intimidate appellant. Appellant stated at the suppression hearing that he did not pay much attention to the pictures of the victim left exposed on a table during the questioning. Appellant repudiated his confession, placing blame for the murder on someone else, but later returned to his original story of dropping off the victim at her home.
*477 Although some evidence to the contrary exists, the above facts show the decision of the District Court does not clearly contravene the weight of the evidence. We must, therefore, affirm the District Court’s ruling on the voluntariness of appellant’s confession.
Speaking to the second aspect of this issue, whether appellant was unconstitutionally denied his. right to counsel during the interrogation process, the District Court concluded:
“That the defendant never made an effective assertion of counsel and in any event thereafter knowingly and intelligently waived the presence of counsel by spontaneously stating he did not want a lawyer and resuming talking to the police.”
This conclusion raises two questions for consideration on appeal: (1) Did appellant effectively assert his right to an attorney? and, (2) if so, did appellant thereafter waive his right to counsel?
In Miranda, the Court stated:
“Prior to any questioning, the person must be warned that he has a right to remain silent, that any statements] he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.” (Emphasis added.) Miranda v. Arizona (1966), 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.E.2d 694.
Although the witnesses at the suppression hearing gave conflicting testimony concerning the language used by appellant in allegedly asserting his right to counsel, the trial court found that appellant “brought up the subject of an attorney” twice, on the second occasion stating, “maybe I should have an attorney.” This language brings appellant’s assertion within the “indicates in any manner” language set out in Miranda as the requirement for an effective assertion of the right to counsel. Thus, the District Court erroneously concluded that appellant did not effectively assert his right to counsel.
*478 We must decide, therefore, if the District Court also erred in concluding that appellant waived his right to counsel after an effective assertion of the right. Although the United States Supreme Court has not yet ruled on the issue, see Brewer v. Williams (1977), 430 U.S. 387, 405-06, 97 S.Ct. 1232, 51 L.Ed.2d 424, several of the circuit courts have held a defendant can validly waive the right to counsel after making a request for counsel. United States v. Rodriguez-Gastelum (9th Cir. 1978), 569 F.2d 482, cert. denied, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760; United States v. Hodge (5th Cir. 1973), 487 F.2d 945. We hold that this view correctly interprets the situation in Montana and adopt this rule. In so doing, we recognize that a waiver of the right to counsel cannot be presumed and that the State bears a heavy burden to show waiver. North Carolina v. Butler (1979),--U.S.--, 99 S.Ct. 1755, 60 L.Ed.2d 286, 292.
Given this standard and the District Court’s findings of fact, the District Court did not err in holding appellant waived his right to counsel. The District Court found that the first assertion of the right was made on Sunday morning. After being advised by the police that he could have counsel if he wished, appellant continued answering questions. Thus, appellant voluntarily abandoned his right to counsel at this point and unilaterallly resumed the interview without prompting by the interviewing officers. The Sunday interview terminated around noon with no incriminating statements being made by appellant.
The next interrogation session did not begin until Monday evening. Between the interviews more than 30 hours elapsed, including a full business day in which appellant was not detained and was free to consult with family members or an attorney if he wished. Prior to the Monday interrogation, appellant again received his Miranda warnings and signed a waiver. During the questioning session, appellant again asserted his right to counsel. With this, the officers stopped questioning appellant and began to leave the room. Appellant resumed talking to the police and they reminded him he had just said he wanted an attorney. Appellant then stated he did not want a lawyer and the interrogation continued.
*479 These facts — particularly the more than 30-hour time span between the first assertion of the right to counsel and any inculpatory statement, the rereading of his Miranda warnings and the signing of a waiver before any incriminating statement, and the express statement by appellant that he did not want a lawyer — represent a waiver of the right to counsel on tjbe part of appellant.
The law on the second issue raised by appellant is clear. Recent Montana and United States Supreme Court decisions invalidate section 46-13-301(4), MCA. Lego v. Twomey (1972), 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618; State v. Smtih (1974), 164 Mont. 334, 338, 523 P.2d 1395, 1397. The State must prove the voluntariness of a confession at a suppression hearing by a preponderance of the evidence. If the trial court applied section 46-13-301(4) and required appellant to prove the confession involuntary, it erred.
Error by the trial court cannot be presumed but must be shown by the record. State v. Straight (1959), 136 Mont. 255, 264-65, 347 P.2d 482. Reviewing the record of the suppression hearing, the trial judge heard arguments by the prosecuting attorney that, while at the trial the State must prove voluntariness, the burden to show the police violated appellant’s rights rested on appellant at the suppression hearing. Responding to this argument, the judge stated, “Well, it appears to me that what you say is true. Mr. Volinkaty [appellant’s attorney], at the trial, if they wish to introduce this at trial, the burden is on the State to prove voluntariness; however, this is a motion to suppress and I think that, since it is your motion, you should proceed at this time.”
This record presents the possibility of two errors by the District Court. First, the trial judge could have erred in requiring the appellant to go forward with the evidence. The federal courts have considered this question on several occasions. Speaking to this issue in a case involving the suppression of wiretap evidence, the Fifth Circuit Court stated:
“(b) Burdens of proof in suppression hearings. It is well established that the burdens of production and persuasion general *480 ly rest upon the movant in a suppression hearing. [Citations omitted.] Concededly, in some well-defined situations the ultimate burden of persuasion may shift to the government upon an initial showing of certain facts by the defendant. For example, if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search. [Citation omitted.] Or if a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination . . . even in those situations, the defendant must first discharge his initial burden of producing some evidence on specific factual allegations sufficient to make a prima facie showing of illegality. ” United States v. DeLa Fuente (5th Cir. 1977), 548 F.2d 528, 533-534, cert. denied, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 and 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312.
In United States v. Crocker (10th Cir. 1975), 510 F.2d 1129, the trial court denied appellant’s motion to suppress a confession. On appeal, the appellant contended the trial court at the suppression hearing improperly required her to assume the burden of proof and of going forward with the evidence. The Circuit Court responded to this argument, saying:
“It is fundamental on a motion to suppress there must be ‘a foundation in fact for the legal result.’ Rogers v. Richmond, 365 U.S. 534, 546, 81 S.Ct. 735, 742, 5 L.Ed.2d 760 (1961). Logic dictates that a pre-trial Motion to Suppress filed by an accused does in fact cast the burden upon the movant to present facts necessary to sustain his position. [Citation omitted.]” Crocker, 510 F.2d at 1135.
The court goes on to state:
“While the defendant must first present evidence in support of his motion to suppress which satisfies his burden of challenging the legality of the confession, we have recognized that the Government must then carry the countervailing burden of proving a waiver of the constitutional privilege against self-incrimination.” 510 F.2d at 1135.
*481 See also United States v. Polizzi (9th Cir. 1974), 500 F.2d 856, 910, cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820.
These cases indicate a trial judge can properly require a party moving for the suppression of evidence to initiate suppression hearing proceedings. The rationale for such a procedure is the requirement that the movant establish a prima facie case that a constitutional infringement has occurred. Once this has been accomplished, the ultimate burden of proving the propriety of the state’s action shifts to the state. Thus, the District Court here did not err in requiring appellant to present his evidence first at the suppression hearing.
Although allowable, we do not recommend this procedure as standard practice at suppression hearings. The District Courts should employ this procedure only when necessary to establish a prima facie case of infringement by the State. If a prima facie case is presented by the party requesting the suppression of evidence to the trial court’s satisfaction through prehearing documentation, the State should be required to initiate the suppression hearing proceedings. This procedure will clearly place the burden of proof on the State as required by Lego and Smith.
The second possible error presented here is whether there was an improper burden of proof put on appellant at the suppression hearing. The above excerpt from the hearing transcript clearly shows the trial judge applied the incorrect standard at the suppression hearing. After hearing the State’s argument that appellant was required to prove the confession involuntary, the judge stated he thought that what the prosecuting attorney said was true and required appellant to proceed. As noted above, we find that this required appellant to assume the obligation of going forward with the evidence. It also shifted the burden of proof to appellant.
However, we find here that even though the trial court’s ruling did shift the burden, the ruling can be sustained as harmless error. The error here is federal constitutional error. Lego v. Twomey, supra; Jackson v. Denno (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. While not all errors of constitutional magnitude call *482 for reversal, “. . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.” Chapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705.
In determining the existence of harmless constitutional error, the appellate court considering the question has the task of applying the harmless beyond a reasonable doubt test. Chapman, 386 U.S. at 24, 87 S.Ct. 824; see also Harrington v. Califronia (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Schneble v. Florida (1972), 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340.
Applying this standard to the instant case, we find the error was harmless beyond a reasonable doubt. We are aided in our decision by the rationale expressed in Rogers v. United States (5th Cir. 1964), 330 F.2d 535, cert. denied, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186. Rogers is another case holding no error exists in requiring a defendant to initiate suppression hearing proceedings. 330 F.2d at 542. In so holding, the court stated:
“. . . The burden of producing evidence is never crucial unless certain necessary facts in a case are not aired. Here all the salient facts were aired. New were even in dispute. The defendant, therefore, was not prejudiced by the order in which the evidence was presented. And the district judge allowed defendant’s counsel to examine all of the witnesses as hostile. There is no prejudicial error in the records.” 330 F.2d at 543. (Emphasis added.)
As in Rogers, the trial judge heard all the salient facts at the suppression hearing. The trial court heard testimony from eleven witnesses including appellant, appellant’s father, the officers who interviewed appellant, the polygraph examiner, a clinical psychologist, and a learning disabilities specialist. The trial judge allowed appellant’s attorney to examine witnesses as adverse in appellant’s initial presentation. At the conclusion of the appellant’s initial presentation, the State introduced evidence of voluntariness through its own witnesses. When the State rested, the trial court gave appellant the opportunity to present rebuttal testimony. Throughout the proceedings, both sides conducted extensive direct, *483 cross, redirect, and recross examination of the witnesses. In addition to the witness testimony, the trial judge had the benefit of briefs from appellant and the State on the voluntariness question.
After considering all this testimony and the briefs of counsel, the trial judge found the confession voluntary. Given the extensive nature of the proceedings and the full right of appellant to present his case on this issue, we are convinced beyond a reasonable doubt the trial judge would have reached the same result regardless of the improper placing of the burden of proof on appellant. Any error thus constitutes harmless error and does not warrant returning the case to the trial court.
Appellant’s arguments concerning the third issue lack merit. Regarding the sufficiency of evidence to support a guilty verdict, this Court has said:
“On appeal we examine the evidence to determine whether the verdict is supported by substantial evidence. In doing so, we view the evidence in the light most favorable to the State.” State v. Merseal (1975), 167 Mont. 412, 415, 538 P.2d 1366, 1938.
Beyond the confession, the State presented evidence that placed appellant with the victim about three blocks from the scene of the murder near the probable time of the murder. Appellant could not explain his whereabouts at the time the murder probably occurred. Appellant had told his brother, “I think they’re going to get me for the murder” before the police even questioned him about the homicide. And, appellant had borrowed his brother’s shoes the morning after the murder because his own were wet, even though every witness who was with appellant and the victim on the night of the murder agreed that appellant had not walked near any water. This evidence, when viewed in the light most favorable to the State, as we must do when the State prevails at the trial level, sufficiently supports appellant’s conviction on the charge of deliberate homicide.
For the foregoing reasons, we affirm the judgment of the District Court.
*484 MR. CHIEF JUSTICE HASWELL and JUSTICE DALY concur.