PEOPLE *v.* ROBERTS.

1. CRIMINAL LAW—MINORS—COERCION OF CONFESSION—DUE PROCESS.
Actions of police officers were inherently coercive of 15-year-old boy and violated his constitutional right to due process when he was questioned for 4–1/2 hours, accused of lying, his shoes removed, pictures of murder victim placed on table near him, and he was not advised of his rights to counsel, to remain silent, or that incriminating statements could be used against him at trial (US Const, Am 14).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 21 Am Jur 2d, Criminal Law § 222; 20 Am Jur, Evidence § 522. Voluntariness and admissibility of minor's confession. 87 ALR2d 624.

2. SAME—MINORS—CRIMINAL INVESTIGATION—DUE PROCESS.
   Test of due process is totality of circumstances surrounding criminal investigation of youthful subject (US Const, Am 14).

3. SAME—MINORS—STATUTORY SAFEGUARDS—CRIMINAL INVESTIGATION.
   Compliance with constitutional and statutory safeguard requirements is necessary when criminal investigation of youthful subject changes from investigation to accusation.

4. SAME—MINORS—CONFESSION—ADMISSIBILITY—DUE PROCESS.
   Confession obtained from 15-year-old defendant in violation of his right to due process in that he was not taken immediately to judge of a juvenile court and not accorded opportunity to obtain the advice of a lawyer or an adult *held*, inadmissible at trial.

Appeal from Recorder's Court; Davenport (Elvin L.), J. Submitted Division 1 April 5, 1966, at Detroit. (Docket No. 905.) Decided June 28, 1966.

Louis Roberts was convicted of murder in the second degree. Defendant moved for a new trial and to exclude alleged confession at new trial. Motions granted. The people appeal. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, *Angelo A. Pentolino*, Assistant Prosecuting Attorney, for the people.

*Sheldon Otis*, for defendant.

McGREGOR, J. This is a prosecutor's appeal from an order granting defendant's motion for a new trial and excluding defendant's alleged confessional statements.

Defendant Louis Roberts was charged with the crime of murder in the first degree. After being

bound over for trial following his preliminary examination, defendant moved to quash the information because it was based on certain alleged confessional statements which were admitted at the preliminary examination. From an adverse ruling, defendant sought and obtained leave to appeal to the Michigan Supreme Court, which affirmed by an equally divided vote. *People* v. *Roberts* (1961), 364 Mich 60.

On February 6, 1962, the jury impaneled to hear the cause could not agree upon a verdict and the Court entered an order declaring a mistrial and discharged the jury. A second trial resulted in a similar jury disagreement and order of mistrial, on June 14, 1962. A third trial was commenced on November 14, 1963, and on November 27, 1963, a jury returned a verdict of guilty of murder in the second degree. On January 13, 1964, defendant was sentenced to serve a term of 15–35 years. Defendant timely filed a motion for a new trial and judgment notwithstanding the verdict. During the pendency of said motion, decisions were rendered in *Jackson* v. *Denno* (1964), 378 US 368 (84 S Ct 1774, 12 L ed 2d 908), and *People* v. *Walker* (1965), 374 Mich 331. In consequence thereof, the trial court ordered defendant returned to court for the purpose of hearing testimony relating to the admissibility of his alleged confessional statements.

During the course of said hearing, the following testimony was adduced: In the month of May, 1959, the Detroit police were investigating the death of Patricia Cioffi. At the time, Louis Roberts was 15 years of age. In the course of investigation, Louis Roberts was questioned by a member of the Detroit police youth bureau. On May 26, 1959, the youth officer took Roberts to the police homicide bureau, and after some questioning there, Roberts was released. On June 16, 1959, a team of Detroit detec-

tives arrested Roberts at his home in the early morning hours. When the police arrived at his home he was asleep, but his grandmother awakened him. The police informed Roberts and his grandmother that they wanted to take him downtown for questioning. Roberts' grandmother was not told she could or should go along, nor was she told she could call an attorney. The police officers claimed they wanted to check out Roberts' story as given to another team of detectives, on May 26, 1959, although no statements of Roberts, made at the time, were in conflict with his earlier statements. Roberts was taken directly to an interrogation room at police headquarters and was questioned by the officers, but at no time was he locked up with other prisoners.

On that day, a detective Rozek interrogated Roberts from about 9:30 a.m. to 12:30 p.m. During the questioning Roberts' shoes were removed. Rozek told Roberts several times he was lying, that he (Rozek) wanted the truth, and that he didn't believe Roberts' denial of guilt. The apparent purpose of Rozek's questioning was to obtain a confession from Roberts, as the prime suspect. Pictures of the nude body of the deceased victim were lying on a nearby table. Roberts was never advised of his rights to counsel, to remain silent, or that incriminating statements could be used against him in a criminal trial. When Roberts allegedly confessed to Detective Rozek, no youth officer was present. After the alleged confession, made to Detective Rozek, Roberts was taken to the prosecutor to formalize the earlier confession, later to the alleged scene of the crime, then to his home, and eventually to the juvenile detention home. A youth officer was present on the latter journeys, but he never advised Roberts of any rights, although the officer was charged with a duty to stand in the shoes of parents,

and to aid juveniles who have difficulty with the police. The confession given to Detective Rozek was testified to by the detective at a juvenile waiver proceeding.

"A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter." CL 1948, § 712A.23 (Stat Ann 1962 Rev § 27.3178 [598.23]).

"In case a child under the age of 17 years is taken into custody or detained, such child shall not be confined in any police station." CL 1948, § 712A.16 (Stat Ann 1962 Rev § 27.3178 [598.16]).

The trial court did not rule upon the validity of the use of the alleged confession in the trial court after its use in the probate court proceedings.

"Whenever any child under the age of 17 years is arrested with or without a warrant, such child shall be taken *immediately* before the juvenile division of the probate court of the county wherein the offense is alleged to have been committed and the officer making the arrest shall *immediately* make and file or cause to be made and filed, a petition against such child as provided by chapter 12A of Act No. 288 of the Public Acts of 1939, as amended, being sections 712A.1 to 712A.28 of the Compiled Laws of 1948 and the said court shall proceed to hear and determine the matter in like manner as provided by said act, as amended. If, during the pendency of any criminal case against any child in any court in this State having criminal jurisdiction, it shall be ascertained that said child is under the age of 17 years, it shall be the duty of the court before whom such case is pending to *immediately* transfer such case, together with all papers connected therewith to the juvenile division of the

probate court of the county wherein the offense is alleged to have been committed: Provided, however, That in any case where a child over the age of 15 years is charged with a felony the judge of probate of the county wherein the offense is alleged to have been committed, may, after investigation and examination, and upon motion of the prosecuting attorney, waive jurisdiction; whereupon it shall be lawful to try such child in the court having general criminal jurisdiction of such offenses. If, during the pendency of any criminal case against any child in any court of record other than a probate court, it shall be determined that said child is 17 or 18 years of age, then the said court may in its discretion if the court finds that any of the conditions exist as outlined in subsection (d) of section 2 of chapter 12A of Act No. 288 of the Public Acts of 1939, as amended, being section 712A.2 of the Compiled Laws of 1948, upon motion of the prosecuting attorney, the child or his or her representative, transfer such case together with all papers connected therewith to the juvenile division of the probate court of the counties wherein the offense is alleged to have been committed." CLS 1961, § 764.27 (Stat Ann 1965 Cum Supp § 28.886). (Emphasis supplied.)

The trial court granted a new trial and excluded the alleged confessional statements, based primarily upon *Gallegos* v. *Colorado* (1962), 370 US 49 (82 S Ct 1209, 8 L ed 2d 325), and the procedural safeguard requirements of the quoted statute.

The police department showed an awareness of both the quoted statutory provision enacted for the special protection of a minor charged with a crime and the Supreme Court decisions relating thereto, by having youth officers whose job it is to stand in the shoes of a parent of the youth when he is in difficulty with the police and, upon arrest, to stay with the juvenile until he is taken to the detention home. The procedural manner was considered by

the Supreme Court of Michigan in the instant matter in *People* v. *Roberts, supra.*

Was the interpretation of the statutorily used word "immediately", as interpreted by the trial judge, too restrictive? We think not, as a careful reading of the trial court's well-written and thoughtful opinion clearly shows that the totality of circumstances test was the basic consideration. The trial judge relied primarily upon the law as expressed in *Gallegos* v. *Colorado, supra; Jackson* v. *Denno, supra; People* v. *Walker, supra;* and the cited provisions of the Michigan probate code. In *Gallegos,* the supreme court of Colorado affirmed the conviction of a 14-year-old accused of murder following a robbery. The juvenile was arrested shortly after the crime and readily confessed to being the perpetrator. After being kept by the police for 5 days, a formal confession statement was taken from him. He freely admitted during such determination that he was not physically coerced, intensively questioned, or psychologically threatened. The United States Supreme Court reversed his conviction and said (pp 54, 55):

"The prosecution says the boy was advised of his right to counsel, but that he did not ask either for a lawyer or for his parents. But a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interest or how to get the benefits of his constitutional rights.

"The prosecution says that the youth and immaturity of the petitioner and the five-day detention are irrelevant, because the basic ingredients of the

confession came tumbling out as soon as he was arrested. But if we took that position, it would, with all deference, be in callous disregard of the boy's constitutional rights. He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself. A lawyer or an adult relative or friend should have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had. To allow this conviction to stand would, in effect, be to treat him as if he had no constitutional rights."

It is noted that in the instant case, the trial judge's opinion made no finding that the confession was entirely voluntary, but held the same to be inadmissible as in the *Gallegos* decision, because it was obtained in violation of due process. In this instant matter, having the pictures of the nude body of the deceased victim lying on a nearby table, the failure to advise the accused of his constitutional rights to counsel or to remain silent or that incriminating statements made by him could be used against him in a trial, the removal of his shoes, the accusation of the questioning officer that the accused was lying, all contributed to the totality of circumstances which, where a child is criminally involved, is inherently coercive, and constituted a violation of the 14th Amendment of the United States Constitution. Thus, when this continuing probe changed from

investigatory to accusatory, this youthful defend-
ant's constitutional rights were violated. It is
apparent that long before the conclusion of the
four-and-one-half hour questioning period, the ex-
amining officer was thrusting an accusatory finger
at this youthful defendant. The police may have
the right to bring a youth to police headquarters
for investigation, but when he becomes a prime
suspect, then it is time for the police to comply
with the constitutional and statutory safeguards
due a young defendant. We conclude that the right
to question a suspect extends to a juvenile as well
as to an adult and may be done under certain pro-
tective circumstances in a police station. Such com-
pliance is absolutely and immediately necessary at
the moment when the search for knowledge turns
from investigation to accusation. Quoting with
approval from the well-written opinion of the trial
judge:

"In the light of the opinions in this case (*Gallegos*
v. *Colorado, supra*) both the majoriy and the dis-
senting opinion, we examine People v. Roberts, the
instant case, and we ask whether these protections
were afforded defendant Roberts; that is to say, was
an opportunity given him before his confessions
were taken to have a lawyer present, or a parent
present? The hearing indicates in the negative.
Even these requirements seem important to the
learned justices in dissent. In the majority opinion,
on page 329 [370 US 55], Mr. Justice Douglas wrote:
" 'There is no guide to the decision of cases such
as this, except the totality of circumstances that
bear on the two factors we have mentioned. The
youth of the petitioner, [* * *] the failure immedi-
ately to bring him before the judge of the juvenile
court, the failure to see to it that he have the advice
of a lawyer or friend [—] all these combine to make
us conclude that the formal confession on which this
confession [conviction] may have rested (see *Payne*

v. *Arkansas*, 356 US 560, 568 [78 S Ct 844, 2 L ed 2d 975, 981]) was obtained in violation of due process.' "

While we may not subscribe to the whole of the trial judge's opinion, he did arrive at the correct conclusion. Since the recent decisions of the Michigan Supreme Court and the United States Supreme Court have delineated sufficient guidelines concerning other issues raised by the parties, it is unnecessary for this Court to resolve them. We affirm the trial court's order of March 29, 1965, excluding the confessions of the defendant, and granting him a new trial.

HOLBROOK, P. J., and J. H. GILLIS, J., concurred.