PEOPLE v BINGAMAN

Docket No. 69335. Submitted March 9, 1984, at Grand Rapids.— Decided November 26, 1984.

Lonnie R. Bingaman was convicted of armed robbery and assault with intent to commit murder, St. Joseph Circuit Court, James P. Noecker, J. At the time of the commission of the offenses, defendant was a juvenile. He was tried as an adult. At a sentencing proceeding the court stated that defendant was sentenced to imprisonment for from 20 to 30 years, with credit for 266 days served, and defendant was informed of his right to appeal. The prosecutor then addressed the court and presented a probation officer to explain the potential effects of good time on defendant's sentence. The probation officer's explanation led the court to announce that it would change the maximum term of the sentence, and the court directed the probation officer to give it a written letter of recommendation concerning the maximum term that afternoon. An order dated the same day sentenced defendant to two concurrent terms of imprisonment for from 20 to 85 years. Defendant appealed. *Held:*

1. The determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. The rule applies to situations involving juveniles being tried as adults. The court did not err in refusing to suppress evidence of inculpatory statements made by defendant at the time of his arrest. Failure of the interrogating officer to inform defendant of the possibility of his being tried as an adult does not alter

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 *et seq.*

Validity and efficacy of minor's waiver of right to counsel—modern cases. 25 ALR4th 1072.

[2] Am Jur 2d, Criminal Law §§ 595-603.

Defendant's right to disclosure of presentence reports. 40 ALR3d 681.

that. That issue was not raised in the trial court and failure to reverse does not give rise to manifest injustice.

2. The sentencing procedure employed did not comport with the requirements of the court rules and it cannot be said that its employment presented no reasonable possibility of prejudice.

Affirmed in part and remanded for resentencing.

1. Criminal Law — Infants — Right to Counsel — Waiver — Juvenile Court Rules.

The determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his right to remain silent and to have the assistance of counsel; the rule applies to situations involving juveniles being tried as adults (JCR 6).

2. Criminal Law — Sentencing — General Court Rules.

The court rules require a trial court to perform certain tasks prior to imposing a sentence on a defendant and failure to comply requires resentencing (GCR 1963, 785.8).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Robert Cares,* Prosecuting Attorney, for the people.

*O'Malley & Welty* (by *William D. Welty),* for defendant.

Before: MacKenzie, P.J., and J. H. Gillis and J. E. Fitzgerald,* JJ.

Per Curiam. After a nonjury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797, and assault with intent to commit murder, MCL 750.83; MSA 28.278. Defendant was sentenced to imprisonment for from 20 to 85 years, and he appeals as of right.

## I

Defendant argues that the trial court erred by

---

* Circuit judge, sitting on the Court of Appeals by assignment.

declining to suppress evidence of inculpatory statements defendant made during custodial interrogation by state troopers. Defendant was 16 years old at the time he committed the crimes. JCR 6 provides in part:

"1. Right to Counsel: Duty to Advise.

\* \* \*

"(b) A custodial confession made by a child to a peace officer or prosecutor is not admissible *in a subsequent juvenile court proceeding against the juvenile* unless the juvenile was represented by counsel or waived counsel in accordance with subrule 6.2.

"2. Waiver. A child may voluntarily and understandingly waive the right to counsel. If the parent, guardian, or custodian is the complainant or petitioner, the guardian ad litem must concur in the waiver; if not, a parent, guardian, custodian, or guardian ad litem must concur." (Emphasis added.)

This rule, however, is of no assistance to defendant. The emphasized language shows that the rule was not intended to apply where, as here, the juvenile is tried as an adult in circuit court.

In *Fare v Michael C*, 442 US 707, 724-725; 99 S Ct 2560; 61 L Ed 2d 197 (1979), the Court explained:

"[T]he determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel.

\* \* \*

"This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach

is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." (Citations omitted.)

The trial court here properly applied this totality-of-the-circumstances test, and its finding that defendant knowingly and voluntarily waived his rights is amply supported by the evidence.

Defendant's reliance on cases such as *People v Roberts,* 3 Mich App 605; 143 NW2d 182 (1966), *People v Luther,* 20 Mich App 42; 173 NW2d 797 (1969), *People v Wolff,* 23 Mich App 550; 179 NW2d 206 (1970), and *People v Allen,* 109 Mich App 147; 311 NW2d 734 (1981), is misplaced. In those cases, the Court was concerned with violations of MCL 764.27; MSA 28.886, which specifies the procedure for arresting a child under the age of 17, and MCL 712A.23; MSA 27.378(598.23), which prohibits use of evidence given in the juvenile court proceeding or of the results of such a proceeding in any other case. In *Roberts* and *Allen,* the Court considered the statutory violation as part of the totality of the circumstances and concluded that the defendant's confession was involuntary. In *Luther* and *Wolff,* the statutory violations themselves led the Court to hold that any use of the defendant's confession was erroneous. Because MCL 764.27; MSA 28.886 and MCL 712A.23; MSA 27.3178(598.23), in contrast to JCR 6, expressly apply to proceedings other than proceedings in juvenile court, and because the circuit court here correctly applied the totality-of-the-cir-

cumstances test, *Roberts, Luther, Wolff* and *Allen* are not authority for reversal here.

Defendant argues that his statement should be suppressed because the interrogating officer failed to advise him that he could be prosecuted as an adult. Defendant failed to raise this issue in the trial court and, under such circumstances, this Court will not reverse absent manifest injustice. See, for example, *People v Farnsley,* 94 Mich App 34, 36; 287 NW2d 361 (1979). Defendant relies on cases from other jurisdictions which express concern that the nonadversarial nature of the juvenile proceedings could mislead a defendant into confessing. In *State v Maloney,* 102 Ariz 495; 433 P2d 625 (1967) *(overruled in part on other grounds in State v Hardy,* 107 Ariz 583; 491 P2d 17 [1971]), the court held that a juvenile's confession was inadmissible in an adult prosecution absent evidence that the juvenile had been advised that he could be prosecuted as an adult. Several other jurisdictions have rejected the Arizona requirement of express advice but have held that a juvenile's confession is inadmissible unless the trial court finds from the totality of the circumstances that the defendant was aware of the possibility of prosecution as an adult. *People v Prude,* 32 Ill App 3d 410; 336 NE2d 348 (1975); *State v Loyd,* 297 Minn 442; 212 NW2d 671 (1973); *State v Gullings,* 244 Or 173; 416 P2d 311 (1966).

Here, defendant was arrested and disarmed at gunpoint immediately after his commission of the robbery and the stabbing at issue. Defendant was handcuffed and placed in a police car, where he volunteered several inculpatory statements. After receiving the advice required by *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), defendant made a further inculpatory statement. The interrogating officer was not at first

aware of defendant's age and promptly ceased questioning defendant when he learned that defendant was under the age of 17.

The nonadversarial nature of juvenile proceedings could not have misled this defendant into confessing because, at the time defendant confessed, the officers believed defendant to be an adult and had given defendant precisely the same adversarial treatment that a similarly-situated adult would have received. The facts of this case convince us that the Arizona rule is broader than necessary to secure its intended purpose, and we therefore decline to adopt it. Even assuming that the rule stated in *Prude, Loyd* and *Gullings* accurately reflected Michigan law, no manifest injustice was presented here. Defendant's failure to raise this issue in the trial court prevented the prosecution from developing a detailed factual record relating to this issue. Moreover, defendant's age, the circumstances of his arrest, and the crimes he has committed support an inference that defendant was aware of the possibility of prosecution as an adult.

## II

At a sentencing proceeding on November 3, 1982, the court stated that defendant was sentenced to imprisonment for from 20 to 30 years, with credit for 266 days served, and defendant was informed of his right to appeal. The prosecutor then addressed the court and presented a probation officer to explain the potential effects of good time on defendant's sentence. The probation officer's explanation led the court to announce that it would change the maximum term of the sentence, and the court directed the probation officer to give it a written letter of recommendation concerning

the maximum term that afternoon. An order dated November 3, 1982, sentenced defendant to two concurrent terms of imprisonment for from 20 to 85 years.

Defendant first argues that, after stating a valid sentence on the record, the trial court lost its jurisdiction to impose a different sentence. In several cases, the Supreme Court has stated that a sentencing judge cannot set aside a valid sentence and resentence the defendant after the defendant has been remanded to jail to await execution of the sentence. *In re Richards,* 150 Mich 421, 426; 114 NW 348 (1907); *People v Fox,* 312 Mich 577, 581; 20 NW2d 732 (1945); *People v Chivas,* 322 Mich 384, 395-396; 34 NW2d 22 (1948); *People v Barfield,* 411 Mich 700, 703; 311 NW2d 724 (1981); *People v Dotson,* 417 Mich 940; 331 NW2d 477 (1983), *rev'g* 112 Mich App 589; 316 NW2d 268 (1982). In *People v Meservey,* 76 Mich 223, 226; 42 NW 1133 (1889), the Court stated the rule as follows:

> "The circuit judge had no power at that time to vacate the sentences, because the authority over the prisoners had passed out of his hands by his own order."

One member of this panel has relied on *Meservey* to conclude that it is the issuance of the court's sentencing order, not the physical incarceration of the defendant, which terminates the court's authority to modify a sentence. *People v Stewart,* 69 Mich App 528, 534-535; 245 NW2d 121 (1976) (J. H. GILLIS, J., concurring in part and dissenting in part). Here, however, the court announced its intention to modify the sentence before defendant had been remanded to jail to await execution of the sentence and before the court's

sentencing order had been issued. The sentence eventually imposed by the court was valid under either test. Defendant has not cited, and we cannot find, any authority indicating that mere oral pronouncement of the sentence terminates the court's authority to modify the sentence. We decline to create such an inflexible rule here.

Defendant also argues that the court erred by setting the maximum term of the sentence by order without first stating the maximum term of the sentence at a proceeding in open court with defendant personally present. GCR 1963, 785.8 provides:

"Sentencing. Before sentence is imposed the court shall:

"(1) require the presence of defendant's lawyer unless affirmatively waived by defendant;

"(2) give defendant and his lawyer a reasonable opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence;

"(3) state the minimum and maximum sentence imposed by the court, together with any credit for time served to which the defendant may be entitled.

"Provisions of subrule 785.8 are mandatory and failure to comply shall require resentencing."

This subrule plainly envisions a proceeding in open court with defendant personally present at which the minimum and maximum terms of the sentence imposed are stated. No such proceeding took place here. Moreover, defendant correctly points out that the procedure adopted by the court effectively deprived defendant and his attorney of a reasonable opportunity to respond to the prosecution's arguments and representations concerning good time and thus infringed upon the right of allocution established by GCR 1963, 785.8(2).

The prosecution points to *People v Morgan,* 400

Mich 527, 536; 255 NW2d 603 (1977), in which the Court said:

"[W]e adopt the following language from *Wade v United States,* 142 US App DC 356, 360; 441 F2d 1046, 1050 (1971), as the proper test for determining whether a defendant's absence from a part of a trial requires reversal of his or her conviction:

" 'It is possible that defendant's absence made no difference in the result reached. The standard by which to determine whether reversible error occurred [is] * * * whether there is "any reasonable possibility of prejudice".' "

*Morgan,* however, dealt with whether a defendant's absence from part of the trial amounted to a denial of due process. Compliance with the provisions of GCR 1963, 785.8 is absolutely mandatory. See *People v Berry,* 409 Mich 774; 298 NW2d 434 (1980). Moreover, on this record, it cannot be said that there was no reasonable possibility of prejudice resulting from the failure to comply with the requirements of the rule. The probation officer's statements to the court concerning the potential effects of good time on defendant's sentence contain serious inaccuracies which, had the proper procedures been followed, the defense would have had an opportunity to point out.

The probation officer stated:

"*[Probation Officer]:* Yes. So, so, in fact, I don't know off the top of my head. I know a fifty year sentence, minus good time, adds up to eighteen years and some change. So you're dealing with a sentence here of thirty year maximum, minus good time, *would get it down probably in the twelve to fifteen year period.*

"*The Court:* I understand your point.

"*[Probation Officer]:* I was inaccurate when I talked to Mr. Cares two weeks ago about the problem. What the Department of Corrections will do as he reaches the

maximum sentence, minus good time, sooner than twenty years, they will release him at that time because he will have been discharged from his sentence. So if you have a thirty year maximum sentence, *he will actually discharge before he has served the flat twenty year sentence."* (Emphasis added.)

Armed robbery and assault with intent to commit murder are "Proposal B" crimes; defendant therefore could not be paroled until he had served the minimum terms of his sentences undiminished by good time or special good time. MCL 791.233b; MSA 28.2303(3). However, good time and special good time can reduce the maximum term of a sentence, and a defendant must be released (not paroled) when the maximum term of the sentence expires, even though the minimum term of the sentence has not been served. OAG 1979-1980, No 5,583, p 438 (October 16, 1979). At the time of sentencing, good time and special good time were controlled by MCL 800.33; MSA 28.1403, which provided in part:

"(2) Except as provided in subsections (3) and (4), a convict who does not have an infraction of the rules of the prison or a violation of the laws of this state recorded against him shall receive a reduction from his sentence as follows:

"(a) During the first and second years of his sentence, 5 days for each month.

"(b) During the third and fourth years, 6 days for each month.

"(c) During the fifth and sixth years, 7 days for each month.

"(d) During the seventh, eighth, and ninth years, 9 days for each month.

"(e) During the tenth, eleventh, twelfth, thirteenth, and fourteenth years, 10 days for each month.

"(f) During the fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth years, 12 days for each month.

"(g) From and including the twentieth year, up to and including the period fixed for the expiration of the sentence, 15 days for each month.

* * *

"(8) The warden of an institution subject to this act may, with the consent and approval of the director of the department of corrections, extend the good time allowance beyond that specified in subsection (2) to persons whom he deems to have achieved a decided reformation since the date of commitment or for good work records or for exemplary conduct. Additional good time allowance shall not exceed 50% of the good time allowance under the schedule in subsection (2). This subsection is effective as to all prisoners in custody at institutions as well as to prisoners who shall hereafter be committed."

The statute shows that, during the 20 years of defendant's minimum terms, defendant could accumulate no more than 2,256 days of good time pursuant to subsection (2) plus no more than 1,128 days of special good time pursuant to subsection (8) for a total of 3,384 days, or slightly more than 9-1/4 years. Defendant therefore could not be released before expiration of his minimum term and the probation officer's estimate that defendant could be released in 12 to 15 years was seriously in error. Because the effect of this error on sentencing was unclear, we cannot say that the absence of a reasonable opportunity to respond to the prosecution's representations concerning good time and special good time presents no reasonable possibility of prejudice.

Affirmed in part and remanded for resentencing.