MICHIGAN *ex rel* OAKLAND COUNTY PROSECUTOR v
DEPARTMENT OF CORRECTIONS

Docket No. 158838. Submitted May 4, 1993, at Lansing. Decided May
26, 1993, at 9:00 A.M. Leave to appeal sought.

Harold C. Anderson was convicted in the Oakland Circuit Court,
Farrell E. Roberts, J., of assault with intent to commit murder
and was sentenced to ten to thirty years in prison. While
imprisoned, he earned regular good-time and special good-time
credits and was discharged after having served thirteen years
and four months. The Oakland County Prosecuting Attorney
contested the discharge, arguing that the Department of Cor-
rection's method of calculating the credits violated MCL
800.33(2) and (12); MSA 28.1403(2) and (12). The Oakland
Circuit Court, Deborah G. Tyner, J., rescinded the discharge,
ordered Anderson's arrest, and granted the prosecutor's motion
for a declaratory judgment and a writ of mandamus, finding
that the DOC's method of calculating the credits was illegal and
ordering the DOC to use the method proposed by the prosecutor.
The DOC and the warden of the State Prison of Southern
Michigan appealed, and Anderson cross appealed. On March
30, 1993, the Supreme Court granted the defendants' motion
for immediate consideration and denied their application for
leave to appeal before the decision by the Court of Appeals. On
April 8, 1993, the Court of Appeals, DOCTOROFF, P.J., and
FITZGERALD and TAYLOR, JJ., on its own motion, granted a stay
of the circuit court's order and directed the DOC to resume
using its prior method of calculation, reinstate all credits that
would have been granted under that method, and release any
prisoners whose credit entitled them to release. The prose-
cutor's application for an interlocutory appeal from the order of
the Court of Appeals staying the trial court's order was denied
by the Supreme Court. 442 Mich 894 (1993).
The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Penal and Correctional Institutions §§ 228-232; Statutes
§§ 161 *et seq.*

Supreme Court's view as to weight and effect to be given, on
subsequent judicial construction, to prior administrative construc-
tion of statute. 39 L Ed 2d 942.

1. The DOC did not violate the statute by using the "immediate usage" method of calculation, whereby prisoners are permitted to use immediately their good-time credit as earned to reduce both their minimum and maximum sentences, with the result that the next year of a sentence begins not upon the actual service of a calendar year in prison, but upon completion of a shortened year as reduced by regular and special good-time credits. The statute does not set forth the precise method for calculating good-time credits. The Legislature has consented or acquiesced to the correctness of the DOC's use of the immediate usage method for at least the last fifty years by failing to object to it or, when amending the statute, to amend it to require a different method of calculation. The Supreme Court and the Attorney General have also approved of the method of calculation employed by the DOC. The trial court erred in granting the prosecutor's motion for a declaratory judgment and a writ of mandamus.

2. The prosecutor had standing to bring this action.

3. The prosecutor was not required to exhaust administrative remedies by requesting a declaratory ruling from the DOC, because seeking such a ruling would have been futile.

4. The trial court had jurisdiction with regard to Anderson even though he had been discharged from his sentence.

5. Anderson was not denied due process.

Reversed.

1. Prisons and Prisoners — Sentences — Good-Time Credits.

The Department of Corrections' use of the "immediate usage" method for calculating regular good-time and special good-time credits for prisoners does not violate the statute that authorizes the credits; the immediate usage method permits prisoners to use immediately their good-time credit as earned to reduce both their minimum and maximum sentences; the next year of a sentence begins not upon the actual service of a calendar year in prison, but upon completion of a year reduced by good-time credits; the method allows a prisoner to become eligible for the higher accrual rates of good-time credits sooner than the corresponding calendar year and thus to become eligible for parole or discharge at an earlier date (MCL 800.33[2],[12]; MSA 28.1403[2],[12]).

2. Statutes — Construction of Statutes — Prisons and Prisoners — Administrative Interpretation — Legislative Acquiescence.

The Legislature's failure to amend the statutory provision regarding good-time credits for prisoners so as to require the Depart-

ment of Corrections to calculate the credits in a manner other than the "immediate usage" method employed by the department indicates consent or acquiescence with regard to the method (MCL 800.33[2],[12]; MSA 28.1403[2],[12]).

*Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the Department of Corrections and Warden John Jabe.

*Daniel E. Manville, P.C.* (by *Daniel E. Manville*), for Harold Anderson.

Before: WAHLS, P.J., and SHEPHERD and CAVANAGH, JJ.

SHEPHERD, J. Defendants Michigan Department of Corrections (DOC) and Warden John Jabe appeal as of right a December 1, 1992, order granting plaintiff's motion for a declaratory judgment and a writ of mandamus. On March 24, 1993, this Court granted defendant Harold Anderson's application for delayed cross appeal of the same lower court order. In an order dated March 30, 1993, the Michigan Supreme Court granted defendants' motion for immediate consideration, but denied their application for leave to appeal before the decision of the Court of Appeals, instructing this Court to expedite its consideration of this matter and to issue a decision no later than June 1, 1993. We reverse.

I

This case involves the method of calculating

regular good-time and special good-time credits under the provisions of MCL 800.33; MSA 28.1403. Following a bench trial, Anderson was convicted of assault with intent to commit murder for an offense that occurred in April 1979. On December 11, 1979, he was sentenced to life in prison. On appeal, Anderson's conviction was affirmed, but the case was remanded for resentencing. 112 Mich App 640; 317 NW2d 205 (1981). On remand, he was resentenced to ten to thirty years in prison.

While Anderson was in prison, he earned all the regular good-time and special good-time credits possible under the formula used by the DOC. As a result, Anderson was discharged from prison on August 12, 1992, after having served thirteen years and four months of his maximum sentence of thirty years.

On September 3, 1992, plaintiff filed a claim of appeal from the discharge of Anderson, a petition for a preliminary injunction, a complaint for a declaratory judgment and mandamus, an ex parte petition for a temporary restraining order, and a request for an order to show cause. Plaintiff argued that the DOC violated MCL 800.33(2) and (12); MSA 28.1403(2) and (12) by granting good-time and special good-time credits for time not yet served rather than only for time actually served.

After a show cause hearing on September 4, 1992, the trial court issued an order dated September 11, 1992, rescinding Anderson's discharge and ordering his arrest. The trial court also preliminarily declared unlawful and void the DOC's method of calculating regular good-time and special good-time credits, preliminarily determined that the DOC had the clear legal duty under MCL 800.33(2) and (12); MSA 28.1403(2) and (12) to compute such time on the basis of time actually served by a prisoner, and further prohibited the

DOC from releasing prisoners on the basis of calculations made pursuant to its previous method of calculating good-time credits. At the same time, the trial court took plaintiff's petition for a declaratory judgment and a writ of mandamus under advisement.

Subsequently, Anderson was arrested and returned to the State Prison of Southern Michigan in Jackson. When Anderson filed a motion for a writ of habeas corpus and a stay of the order rescinding his discharge, primarily because venue allegedly did not properly lie in Oakland County, the trial court entered an order dated September 24, 1992, transferring the matter to the Jackson Circuit Court because Anderson was then detained at the State Prison of Southern Michigan at Jackson.

In an order dated October 8, 1992, this Court reversed the trial court's order transferring the action to the Jackson Circuit Court and reinstated the action in the Oakland Circuit Court on the ground that Oakland County was the proper venue for Anderson's complaint for habeas corpus when he filed it. This Court further ordered that the trial court expeditiously decide plaintiff's appeal and Anderson's third-party action and motions. In the same order, this Court denied Anderson's motion for a stay of the order rescinding his discharge.

On December 1, 1992, the trial court entered an order granting plaintiff's motion for a declaratory judgment and a writ of mandamus, holding that the DOC's method of calculating regular good-time and special good-time credits was illegal and ordering the department to use the "time earned approach" set forth by plaintiff. On April 8, 1993, this Court, on its own motion, granted a stay of the December 1, 1992, order and directed the DOC

to resume using its prior method of calculating good-time and special good-time credits, to reinstate all credits that would have been granted under the former method, and to release any prisoners whose good-time credit calculations entitled them to release. On April 23, 1993, the Supreme Court denied plaintiff's applications for an interlocutory appeal from this Court's stay of the December 1, 1992, order. 442 Mich 894 (1993).

II

Sentence reduction for good-time and special good-time credit is set forth in MCL 800.33; MSA 28.1403, which provides in pertinent part:

* * *

(2) Except as otherwise provided in this section, a prisoner who is serving a sentence for a crime committed before the effective date of this 1986 amendatory act and who has not been found guilty of a major misconduct or had a violation of the laws of this state recorded against him or her shall receive a reduction from his or her sentence as follows:

(a) During the first and second years of his or her sentence, 5 days for each month.

(b) During the third and fourth years, 6 days for each month.

(c) During the fifth and sixth years, 7 days for each month.

(d) During the seventh, eighth, and ninth years, 9 days for each month.

(e) During the tenth, eleventh, twelfth, thirteenth, and fourteenth years, 10 days for each month.

(f) During the fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth years, 12 days for each month.

(g) From and including the twentieth year, up to

and including the period fixed for the expiration of the sentence, 15 days for each month.

\* \* \*

(12) The warden of an institution may grant special good time allowances to eligible prisoners who are convicted of a crime that is committed prior to the effective date of this 1986 amendatory act. Special good time credit shall not exceed 50% of the good time allowances under the schedule in subsection (2). Special good time shall be awarded for good conduct only and shall not be awarded for any month in which a prisoner has been found guilty of a major misconduct.

In computing good-time and special good-time credits, the DOC used the "immediate usage" method whereby prisoners are permitted to use immediately their good-time credit as earned to reduce both their minimum and maximum sentences. Under the immediate usage method, if a prisoner is entitled to five days of regular good-time credit for a given month by remaining free of misconduct, the DOC permits the prisoner to use these five days immediately by beginning the next month of the sentence five days earlier. Accordingly, if a prisoner earned regular good-time credit at the rate of five days a month for the first year, the first year would be served in ten months. If the prisoner were awarded all good-time and special good-time credit available in the first year, the first year would be served in nine months.

The most significant feature of the immediate usage method is that the next year of the sentence begins not upon the actual service of a calendar year in prison but upon completion of a shortened year as reduced by regular and special good-time credits. As a result, the immediate usage method allows a prisoner to become eligible for the higher accrual rates of good-time and special good-time

credits sooner than the corresponding calendar year, and thus to become eligible for parole or discharge at an earlier date.

Plaintiff charges that the DOC's method contravenes the statutory language by applying good-time credit to reduce the length of the calendar year. According to plaintiff, the DOC's method effectively "front loads" all the good-time credit earned by a prisoner into a "good-time bank" as soon as a prisoner enters prison.

Under the "savings account" method proposed by plaintiff, any good-time credit earned by a prisoner is set aside in a "holding account" and may not be used immediately. Thus, under plaintiff's method, a prisoner could not use his good-time credit before actually serving the full calendar year. In contrast to the DOC's method, a prisoner is not eligible for the higher levels of regular good-time credit or for parole or discharge until a later date.

In the present case, the parties' methods result in a significant difference concerning the reduction of defendant Anderson's maximum sentence. Under the DOC's method, all the possible good-time and special good-time credits reduced Anderson's maximum thirty-year sentence to thirteen years and four months. Under plaintiff's method, all the possible good-time and special good-time credits awarded to Anderson only reduced the sentence to approximately twenty years.

III

The principal question before us is whether the DOC's method of calculating good-time and special

good-time credits violated MCL 800.33; MSA 28.1403.[1]

The primary goal of judicial interpretation of a statute is to ascertain and give effect to the intent of the Legislature. *Joy Management Co v Detroit,* 176 Mich App 722, 730; 440 NW2d 654 (1989). Where the meaning of a statute is unambiguous, judicial construction or interpretation is precluded. *Id.* However, if reasonable minds can differ with regard to the meaning of a statute, then judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). In determining legislative intent, the statutory language should be construed reasonably in light of the purpose of the act. *Id.*

In ruling that the DOC's method was illegal, the trial court noted that under the statute a prisoner can only reduce his sentence by "earning" good-time and special good-time credits "during each month served." Thus, the trial court found that "the language of the good time statute is clear and unambiguous and evidences a legislative intent that a prisoner is not to be awarded the total amount of potential good time before he or she has served any portion of the imposed sentence."

Although the statute in question entitles a prisoner to an automatic sentence reduction on a monthly basis provided that the prisoner remains free of misconduct, we note that there is no language setting forth the precise method for calculating regular and special good-time credit.

Contrary to the trial court's view, the statute is

---

[1] This case affects approximately four thousand prisoners who are entitled to the good-time credit provisions of MCL 800.33(2); MSA 28.1403(2). With the passage of 1986 PA 322, effective April 1, 1987, the Legislature replaced the system of good-time credits with disciplinary credits for all those committing a crime after the effective date. See *People v Fleming,* 428 Mich 408, 422, n 16; 410 NW2d 266 (1987), for a brief history of the changes in this statute.

ambiguous in this respect because there are at least two possible interpretations of the method for calculating good-time and special good-time credits, and neither the immediate usage method nor the savings account method is clearly required by the language of the statute.

Here, the DOC selected an interpretation that has been in use for at least fifty years without challenge until the instant case. As the parties acknowledge, upon entering prison, prisoners are given a good-time credit computation sheet that outlines how both regular and special good-time credit will affect their minimum and maximum sentences.[2] This chart, which was also furnished to the courts and the prosecutors, indicated the method that the DOC used in calculating release dates of prisoners.[3]

Despite the fact that the statute dealing with good-time credit has been revised numerous times, the Legislature has never amended the statutory provisions so as to require the DOC to calculate good-time credit in a manner other than the immediate usage method. Here, the Legislature's failure to amend these statutory provisions or object to the DOC's method must be construed as consent or acquiescence to the correctness of that

---

[2] The chart contains forty-six entries showing the amount of time a prisoner would serve if all credits were earned for each of forty-six sentences beginning with a six-month sentence and ending with a fifty-year sentence. For example, the earliest possible release time would be as follows in each of four sample sentences:

| Length of Sentence | Time Served If All Credits Earned |
| --- | --- |
| 6 months | 4 months 15 days |
| 10 years | 6 years 4 months 24 days |
| 30 years | 13 years 4 months |
| 50 years | 18 years 5 months 14 days. |

As indicated, the contents of the chart have been known to courts and prosecutors for at least fifty years.

[3] We also note that this chart was included by the State Court Administrative Office in the 1984 edition of the Michigan Sentencing Guidelines for informational purposes.

interpretation. *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 520; 158 NW2d 473 (1968).

Moreover, although no Michigan appellate court has directly ruled upon the method to be used in calculating good-time credit, we note that the Supreme Court and this Court have previously discussed the DOC's method of calculating regular good-time and special good-time credits without saying that it violates the statute. See *People v Fleming,* 428 Mich 408; 410 NW2d 266 (1987); *People v Tanner,* 387 Mich 683, 689; 199 NW2d 202 (1972); *People v Bingaman,* 144 Mich App 152, 161; 375 NW2d 370 (1984).

In addition, the Attorney General has approved of the DOC's interpretation of the statute. In a 1975 advisory letter to the director of the DOC, the Attorney General concluded that the immediate usage method was valid under MCL 800.33; MSA 28.1403. Although an opinion of the Attorney General is binding on state agencies and officers, such opinions do not have the force of law and are not binding on courts. *Michigan Beer & Wine Wholesalers Ass'n v Attorney General,* 142 Mich App 294, 300; 370 NW2d 328 (1985), cert den 479 US 939 (1986). Even though the Attorney General issued his advice in an unpublished letter and not a formal opinion, the letter is nonetheless evidence of the Attorney General's view that the DOC's interpretation was legally valid and consistent with the statutory language.

In view of the acquiescence of the Legislature and the courts and the approval by the Attorney General, the trial court was wrong to rule that the method violated the statute. A long-standing, consistent interpretation of a statute by those charged with its execution is entitled to considerable weight and ought not to be overruled without

cogent reasons. *Bd of Ed of Oakland Schools v Superintendent of Public Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977); *Feld v Robert & Charles Beauty Salon,* 174 Mich App 309, 314; 435 NW2d 474 (1989), rev'd on other grounds 435 Mich 352 (1990).

Given that the DOC's interpretation is plausible and is consistent with the language of the statute, the department's interpretation was entitled to deference, particularly in light of the long-standing judicial and legislative acquiescence to the DOC's interpretation, and ought not to have been overruled by the trial court without cogent reasons.

In the face of the long-standing use of the good-time credit chart upon which judges, prosecutors, defense attorneys, and criminal defendants have relied for at least five decades, it is hard for us to take seriously plaintiff's claim that this issue has just "come to light." Plaintiff's claim that it only recently discovered the impact of the DOC's method of calculating good-time credit as a result of the present case is not accurate at best. See *Fleming, supra,* pp 424-427, where the Supreme Court noted that the plaintiff in that case acknowledged that judges regularly consulted a good-time credit chart in determining an appropriate minimum sentence and "traditionally factored 'good time' into defendants' sentences"; see also *People ex rel Oakland Prosecuting Attorney v Bureau of Pardons & Paroles,* 78 Mich App 111; 259 NW2d 385 (1977), where the plaintiff litigated the calculation of good-time credit in a case involving the defendant's eligibility for parole without challenging the DOC's method.

Moreover, contrary to plaintiff's assertion, it is simply not true that "prisoners are routinely given a windfall of credit for good time [under the DOC's

method] before a day is served instead of earning credit by demonstrated good behavior." As indicated above, prisoners are provided with a good-time credit computation sheet upon entering prison. These computations are only projections and are used to induce good behavior, because a prisoner must remain free of misconduct in a given month in order to earn the good-time credit and to be awarded special good-time credit by the warden.

On the basis of the foregoing, we conclude that the trial court erred in granting plaintiff's motion for a declaratory judgment and a writ of mandamus.

IV

In addition to the issue regarding the DOC's method of calculating good-time credit, defendant Anderson also raises various issues.

First, Anderson argues that plaintiff lacked standing to bring the present action. Specifically, he contends that because the Oakland County Board of Commissioners has a corporate counsel to represent the county in civil matters, the prosecuting attorney was precluded under MCL 49.72; MSA 5.825 from bringing this civil action unless the board specifically authorized the action. We disagree.

Contrary to defendant Anderson's claim, MCL 49.72; MSA 5.825 does not prevent plaintiff from seeking a declaratory judgment unless the Oakland County Board of Commissioners authorized such action. See *Wayne Co Prosecuting Attorney v Wayne Co Bd of Comm'rs*, 44 Mich App 144; 205 NW2d 27 (1972), where the prosecutor filed a complaint for a declaratory judgment even though the board had hired an attorney to represent the

county in civil matters. Moreover, we note that, in bringing an action for a declaratory judgment, plaintiff was acting in behalf of the people of the State of Michigan pursuant to MCL 49.153; MSA 5.751.

Defendant Anderson also claims that the trial court's order of a declaratory judgment was improper because plaintiff was required under MCL 24.264; MSA 3.560(164) to seek a declaratory ruling from the DOC before filing an action for declaratory relief in circuit court. In the instant case, plaintiff was not required to exhaust administrative remedies by requesting a declaratory ruling from the DOC, because seeking such a ruling would have been futile. *Turner v Lansing Twp,* 108 Mich App 103, 108-109; 310 NW2d 287 (1981).

Next, defendant Anderson contends that the trial court did not have jurisdiction over him because he had been discharged from his sentence. We disagree. If we had agreed with the trial court that the DOC had used an incorrect method for calculating good-time and special good-time credits, then the trial court would have had jurisdiction to vacate defendant's discharge because the discharge itself would have been improper, since defendant's release would have been based upon an improper calculation of good-time credit. Given that no new sentence would have been imposed upon defendant, he would have been required only to complete the sentence from which he would have been improperly discharged. Cf. *People v Gregorczyk,* 178 Mich App 1, 12; 443 NW2d 816 (1989), cert den 496 US 938 (1990).

Nor do we believe that if the DOC's method of calculation were incorrect, defendant Anderson's due process rights would have been violated on the ground that a change in the law could not be applied retroactively to him without violating the

Ex Post Facto Clause of the United States Constitution.

In *Wolff v McDonnell,* 418 US 539, 557; 94 S Ct 2963; 41 L Ed 2d 935 (1974), the United States Supreme Court stated that there is no constitutional right to good-time credit. In *Tessin v Dep't of Corrections (After Remand),* 197 Mich App 236, 241; 495 NW2d 397 (1992), this Court noted that although there is nothing in the United States Constitution that requires the granting of good-time credits, once a state adopts good-time credit provisions and a prisoner earns credit, the deprivation of that good-time credit constitutes a substantial sanction, and a prisoner can properly claim that a deprivation of good-time credit is a denial of a protected liberty interest without due process of law.

Contrary to Anderson's contention, he did not have a right to good-time credit if that credit had been improperly calculated. If the DOC's method were improper, the change in the method of calculating good-time credits would not have operated to increase his sentence, nor would it have denied him good-time credits to which he was legally entitled without due process of law. Here, defendant Anderson was given notice of the proceedings, was brought to court, and was given an opportunity to be heard. He thus received all the process to which he was due. In the event that the DOC had improperly calculated his good-time credit, he would have been required only to serve the originally imposed term of imprisonment.

Reversed.