PEOPLE v WYBRECHT

Docket No. 185428. Submitted December 4, 1996, at Detroit. Decided March 7, 1997, at 9:05 A.M. Leave to appeal sought.

Robert Y. Wybrecht pleaded nolo contendere to three counts of second-degree criminal sexual conduct in the Washtenaw Circuit Court, Karl V. Fink, J., under a plea agreement that called for the prosecution's dismissal of two counts of first-degree criminal sexual conduct. The alleged victim was a five-year-old nephew of the defendant. The defendant suffers from fetal alcohol syndrome and attention deficit disorder and has an IQ of eighty-four and the mental and emotional maturity approximating that of an eleven year old. The court sentenced the defendant at the low end of the sentencing guidelines to concurrent terms of imprisonment of two to fifteen years and immediately sent him to jail to await a transfer to prison. The defendant filed a motion for a stay of sentence and a motion for resentencing. The court granted a stay and ordered that the defendant remain in jail. The court later granted the motion for resentencing and resentenced the defendant to concurrent terms of ninety days in jail, with credit for fifty days, and five years of probation. The prosecution appealed.

The Court of Appeals held:

Sentence review for compliance with the principle of proportionality is a function vested exclusively with the appellate courts. The trial court lacked authority to order a resentencing inasmuch as the original sentences were valid.

1. MCR 6.429(A) provides that a trial court may correct an invalid sentence but may not modify a valid sentence after it has been imposed except as provided by law. Absent a tangible legal or procedural error that makes a sentence invalid, the trial court cannot alter a sentence that the defendant has begun to serve. Only appellate courts are authorized to invalidate sentences for lack of proportionality. In this case, none of the grounds asserted for invalidating the original sentences constitutes an error that warrants the invalidation of those sentences. The defendant cannot impeach the validity of his sentence by submitting additional information to the sentencing court after sentencing, especially where the information was discoverable before sentencing. Parole eligibility was not a

valid sentencing consideration. The original sentences were not rendered invalid by the trial court's failure to resolve the different conclusions drawn by a probation officer and the defendant's psychologists with respect to the defendant's mental capacity to be a pedophile inasmuch as those conclusions were drawn from undisputed facts. The trial court exceeded its authority when it decided to resentence the defendant upon determining that the original sentences were disproportionate.

2. The defendant's original sentences, being within the guidelines, are presumptively proportionate, and the defendant failed to overcome that presumption.

Order granting resentencing reversed; sentences of ninety days in jail and five years of probation vacated; original sentences of two to fifteen years of imprisonment reinstated.

T. G. KAVANAGH, J., dissenting, stated that the execution of the original sentences was suspended upon the entry of the stay, that information at resentencing indicated that the original sentences were not tailored to the defendant, arguably constituting a defect or error in the sentencing proceeding, and that the trial court properly resentenced the defendant.

1. SENTENCES — ALTERATION AFTER COMMENCEMENT.

A sentencing court cannot alter a sentence a defendant has begun to serve absent a tangible legal or procedural error that makes a sentence invalid (MCR 6.429[A]).

2. SENTENCES — PROPORTIONALITY.

Only appellate courts can invalidate a sentence for lack of proportionality.

3. SENTENCES — MODIFICATION.

A sentencing court cannot set aside a valid sentence and impose a new and different one after the defendant has been remanded to jail to await the execution of the sentence.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Senior Assistant Prosecuting Attorney, for the people.

*Jeanice Dagher-Margosian*, for the defendant.

Before: GRIFFIN, P.J., and T. G. KAVANAGH* and D. B.
LEIBER**, JJ.

GRIFFIN, P.J. Pursuant to a plea bargain, defendant
pleaded nolo contendere to three counts of criminal
sexual conduct in the second degree, MCL
750.520c(1)(a); MSA 28.788(3)(1)(a). Thereafter, the
trial court sentenced defendant to concurrent terms
of two to fifteen years' imprisonment and ordered
defendant into custody. Almost two weeks later, the
trial court stayed defendant's sentences. The lower
court then granted defendant's motion for resentenc-
ing, and, on resentencing, reduced defendant's con-
current sentences to ninety days in jail and five years'
probation. The prosecution appeals as of right. We
reverse and reinstate defendant's original sentences.

We hold that sentence review for compliance with
the principle of proportionality is a function vested
exclusively with the appellate courts. Further,
because defendant's original sentences were valid, the
trial court lacked authority to order resentencing.

I

In June 1994, the victim's mother informed the Ann
Arbor police that defendant, the victim's twenty-one-
year-old uncle, had sexually molested her five-year-
old son. On the strength of the victim's preliminary
examination testimony that defendant and the victim
had repeatedly touched each other's penises and per-

---

* Former Supreme Court justice, sitting on the Court of Appeals by
assignment pursuant to Administrative Order No. 1996-10.

** Circuit judge, sitting on the Court of Appeals by assignment.

formed fellatio on each other,[1] the district court bound defendant over for trial on two counts of first-degree and three counts of second-degree criminal sexual conduct. The district court also found defendant to be competent to stand trial, despite the effects of fetal alcohol syndrome that impeded defendant's brain development and resulted in his low-average eighty-four intelligence quotient (IQ).

Thereafter, defendant pleaded nolo contendere in the circuit court to three counts of second-degree criminal sexual conduct in exchange for the withdrawal of the two first-degree criminal sexual conduct charges. Before sentencing, defendant submitted to the trial court a number of psychologists' reports describing defendant's condition and opining that prison may harm defendant.[2] The presentence report also detailed defendant's disability and noted that his mental and emotional maturity approximates that of an eleven year old.[3] Defendant's probation agent recommended that, in order to "salvage this young individual," defendant should receive medication and therapy and participate in a tethering program. However, a senior probation agent recommended a prison

---

[1] The victim also testified that he and defendant once slept naked together in the same bed and ran around the house together without clothes.

[2] The record does not reveal which reports were given to the trial court before sentencing. However, the sentencing transcript shows that the trial court received and read "a number of letters and psychological reports." At sentencing, defense counsel referred to at least two of the psychological reports submitted with defendant's motion for resentencing. Additionally, before pronouncing sentence, the trial court noted: "Certainly, . . . defendant and his family have done an excellent job with the information that was sent in."

[3] The presentence report also noted that defendant, a high school graduate with some college experience, holds a steady job at an Ann Arbor restaurant.

sentence because defendant "could be a threat to the general community; as a pedophile, [defendant] will be difficult to cure and it is well documented that pedophiles may seek multiple victims."

The sentencing judge concluded that defendant should be sentenced within the guidelines, although he recognized that his sentencing decision was exceptionally difficult. After deliberation, the trial court sentenced defendant at the very low end of the guidelines' range,[4] ordered defendant into custody, and executed the judgment of conviction. Thirteen days later, defendant filed a motion to stay his sentence and a motion for resentencing. Attached to defendant's motions were several psychologists' reports (many of which had been referred to by defense counsel at sentencing) opining that prison may be detrimental to defendant.[5] The trial court granted defendant's motion for a stay and ordered that "defendant shall be kept in the county jail until further order of the court."

Two weeks later, the trial court granted defendant's motion for resentencing. In granting the motion, the sentencing judge stated:

I reviewed the materials and . . . have looked at the situation. And we know that the Court of Appeals has, on occa-

---

[4] The trial court recognized that the guidelines' range was unduly low because offense variable (ov) 13 was improperly scored as zero. Without changing the ov score, the trial court sentenced defendant at the low end of the calculated guidelines.

[5] Defendant also submitted a number of affidavits and psychological evaluations dated after the initial sentencing. Most of this documentation contests the senior probation agent's conclusion that defendant is a pedophile and reiterates that prison could be counterproductive for defendant. None of this information is based on facts not knowable before sentencing.

sion, said that sentence is improper—its—its—on its face it
appears to be legal but improper, but considering all the cir-
cumstances that it's not.

I've—after review of the—I've attempted to look at it as
though—not reviewing what I've done myself, but whether
looking at it as the defendant's entitled to, as are the Peo-
ple, but having somebody *look at the total situation and see
whether it appears that there is—it was proper or
improper.* And as the judge, of course, that did it, I'm the
one that's ultimately responsible for seeing that it's properly
done; and I'm—it is my decision that the defendant should
be resentenced.

And I think—and the bottom line is, that is that I believe
that I did not, perhaps, have all the information that I
should have had and did not properly use the information
that I did have. . . .

I want to just state for the record some of the factors that
I've given more consideration to since. One is that—the
defendant's chronological age. *Yes, I was aware of that but
I don't think that—in terms of what an appropriate sen-
tence was, looking back at it, that I gave sufficient input to
that.* I agreed with the statement that defense counsel made
that—about sending a child to prison. It's—in fact, I've had
the thought that there should be—there must be some other
way to deal with it. I don't know. Depending on the circum-
stances sometimes there is not, but under the facts of this
case that I've decided it's wrong to make that the first
option rather than the last option.

The information that I received that parole is not some-
thing that normally happens with offenses of this type in
the first instance, which we've come to—we've all heard
the stories of people being on the—out on the street before
the judge has had time to get the paperwork done, and per-
haps we expect that to happen in every case. And I don't
believe I had—if I had the information, *I didn't give it suf-
ficient consideration that the defendant would—may well
not be out on parole at the first instance.*

The—I attempted, as I do, to sentence people within the
guidelines. And I think that . . . they should not apply to the
facts that we have here, and that *the sentence that was*

*imposed violates the principle of being proportionate con-
sidering all of the factors.* I believe that, *on reflection, had
I considered all that evidence, that I would not have sen-
tenced the defendant to prison.* [Emphasis supplied.]

In resentencing defendant, the trial court stated:

The court recognizes that this sentence is outside the
guidelines. And for the reasons stated when I agreed to
resentence the defendant and particularly because of the
defendant and his developmental age, if that's the proper
term, and what may well happen to him if he does go to
prison and the lack of the availability of early parole if he
does go to prison, those are reasons for deviating from the
guidelines.

II

MCR 6.429(A) provides that the trial court "may
correct an invalid sentence, but the court may not
modify a valid sentence after it has been imposed
except as provided by law."[6] Accord *People v Thomas,*
447 Mich 390, 393; 523 NW2d 215 (1994); *In re Jen-
kins,* 438 Mich 364; 475 NW2d 279 (1991); *People v
Kelly,* 213 Mich App 8, 11-12; 539 NW2d 538 (1995).
This court rule codifies the well-settled principle that
the trial court lacks authority to set aside a valid sen-
tence once the defendant begins serving it. *Moore v
Parole Bd,* 379 Mich 624, 642; 154 NW2d 437 (1967);
*People v Connor,* 348 Mich 456; 83 NW2d 315 (1957);
*People v Chivas,* 322 Mich 384; 34 NW2d 22 (1948); *In
re Mason,* 8 Mich 70 (1860); *People v Catanzarite,*
211 Mich App 573, 582-583; 536 NW2d 570 (1995);

---

[6] "An example of a modification provided by law is MCL 801.257; MSA
28.1747(7), authorizing trial courts to reduce a sentence by one-quarter for
good conduct." *In re Jenkins,* 438 Mich 364, 369, n 2; 475 NW2d 279
(1991).

*People v Williams*, 65 Mich App 531, 533-534; 237 NW2d 545 (1975). Indeed, such an action may infringe upon the Governor's commutation powers and intrude upon the parole board's jurisdiction. *In re Jenkins, supra* at 368; *People v Whalen*, 412 Mich 166, 169; 312 NW2d 638 (1981); *People v Freleigh*, 334 Mich 306; 54 NW2d 599 (1952); *People v Meservey*, 76 Mich 223; 42 NW 1133 (1889); *People v Erwin*, 212 Mich App 55, 63; 536 NW2d 818 (1995); *Wayne Co Prosecutor v Recorder's Court Judge*, 164 Mich App 740; 417 NW2d 594 (1987), aff'd *In re Jenkins, supra*. Thus, absent a tangible legal or procedural error that makes a sentence invalid, the trial court cannot alter a sentence that a defendant has begun to serve. *In re Jenkins, supra* at 368; *Catanzarite, supra* at 582-583; *People v Councell*, 194 Mich App 192, 193-194; 486 NW2d 350 (1992), citing Mich Ct R, p R 6.4-13; *People v Jackson*, 63 Mich App 249, 255; 234 NW2d 471 (1975).

In the present case, the trial court did not declare defendant's prior sentences invalid on any established ground. See, generally, *Whalen, supra* at 169-170. Instead, the trial court reevaluated information it possessed at the original sentencing, reviewed additional information regarding defendant's disability, and assessed defendant's likelihood of early parole. After doing so, the trial court ruled that its original sentences violated the principle of proportionality, thereby entitling defendant to resentencing. On appeal, the prosecution argues that the trial court exceeded its authority by ordering resentencing because grounds for resentencing pursuant to MCR 6.429(A) did not exist. We agree.

A

The first issue is whether the trial court possesses authority pursuant to MCR 6.429 to reconsider its discretionary sentencing decisions and to order resentencing when it determines that its previously imposed sentences violate the principle of proportionality. See, generally, *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). We conclude that it does not, and we hold that only appellate courts are authorized to invalidate sentences for lack of proportionality.

Neither before nor after the enactment of MCR 6.429(A) has the trial court possessed authority to alter inaugurated sentences on the basis of post hoc discretionary sentencing criteria.[7] For example, in *People v Fox*, 312 Mich 577, 579; 20 NW2d 732 (1945), our Supreme Court held that the trial court erred in resentencing the defendant because "the sentence imposed was too severe; that at the time the sentence was imposed the court was not fully aware of the good character of the defendant, nor fully acquainted with all the facts and circumstances." *Id.* Similarly, in *In re Jenkins, supra*, our Supreme Court held that the trial court erred in resentencing the defendant because, upon reflection, it was unable to explain the disparity between two codefendants' sentences. In each case, our Supreme Court held that the trial court's reevaluation of its own discretionary sentencing decision violated the axiomatic principle that the

---

[7] In this respect, Michigan law parallels the federal rule disallowing resentencing based on a change of heart and permitting trial courts to resentence only in cases of "arithmetical or technical" error. See, e.g., *United States v Abreau-Cabrera*, 64 F3d 67, 69, 72 (CA 2, 1995); *United States v Fraley*, 988 F2d 4, 5 (CA 4, 1993); *United States v Arjoon*, 964 F2d 167, 170 (CA 2, 1992).

trial court cannot invalidate its sentences by simply changing its mind. *In re Jenkins, supra* at 377; *Fox, supra* at 581.

This principle has survived the emergence of appellate sentence review. See *People v Coles*, 417 Mich 523; 339 NW2d 440 (1983); see also *Milbourn, supra; People v Moore*, 432 Mich 311; 439 NW2d 684 (1989). In its decisions creating and articulating the scope of sentence review, our Supreme Court has focused exclusively on appellate sentence review. Neither *Coles* nor *Milbourn* nor any other pertinent authority provides the trial court with the authority to review the proportionality of its sentences absent an appellate court directive. See *Wayne Co Prosecutor, supra* at 745. Vesting the trial court with such power would conflict with established doctrine prohibiting the trial court from revisiting sentencing decisions. Indeed, extending this power of sentence review to the trial court would contradict *In re Jenkins, supra* at 366, 370, 371, 373, where, after the emergence of appellate sentencing review, our Supreme Court reiterated the trial court's lack of authority to reexamine its discretionary sentencing decisions.

In addition to the statutory, jurisdictional, and separation of powers issues, sound policy considerations militate against allowing the trial court to reconsider the proportionality of its sentences. As our Supreme Court observed in *In re Jenkins, supra* at 370-372:

> We are persuaded that permitting the trial judge to revisit the sentencing decision may erode judicial accountability. Undermining the finality of the decision might foster carelessness or intrude upon the degree of conviction that ought to attend such a solemn pronouncement. In addition, when the judge who originally imposed the sentence is no

longer on the bench or is unavailable, a new judge, unfamiliar with the record and without the benefit of observing live testimony, will be permitted to review the sentence, without the ability to closely tailor sentences to the unique facts of the particular case.

Moreover, recognizing defendant's right to seek a reduced sentence "would doubtless lead to claims for recognition of the prosecutor's right to petition the sentencing court for an increase of sentence." *Id.* at 371-372. If both parties could implore the trial court to reconsider its sentencing decision, the resulting flood of resentencing motions would strain judicial resources. *Id.* at 371. In high profile cases, judicial autonomy would be called into question if the trial court could alter its sentences after the scrutiny of media publicity or the uproar of public opinion. *Id.*

Accordingly, although *Coles* does "add to the set of circumstances in which a sentence may be declared invalid," *Coles, supra* at 540; see also *People v Williams (After Second Remand)*, 208 Mich App 60, 64; 526 NW2d 614 (1994), the authority to review sentences must remain the exclusive "province of the appellate courts." *In re Jenkins, supra* at 369. If the trial court could invalidate a sentence pursuant to MCR 6.429(A) by deeming it disproportionate, the court rule would efface the axiomatic principle it is intended to codify. Thus, absent a remand, the trial court may alter sentences through MCR 6.429(A) only when necessary to correct objectively definable sentencing errors as identified by our Supreme Court in *Whalen, supra.*[8]

---

[8] In *Whalen, supra* at 169-170, our Supreme Court cited the following examples of the kinds of clear error that make a sentence invalid and susceptible to trial court alteration:

B

We must also decide whether parties may seek to invalidate sentences by producing information after sentencing that, arguably, affects the proportionality of the sentence. Michigan's sentencing system promotes informed, conscientious decision making by providing the parties an almost unlimited opportunity to submit pertinent information before sentencing. MCR 6.425(D)(2)(c); *In re Jenkins, supra* at 370. There is no authority that provides a right to submit personal information after sentencing. On the contrary, it is well settled that information disclosed after sentencing cannot impeach the validity of a sentence. See *Whalen, supra; Fox, supra; People v Pfeiffer,* 207 Mich App 151, 155; 523 NW2d 640 (1994); *People v Pool,* 183 Mich App 191, 192-193; 454 NW2d 121 (1989); *People v Bingaman,* 144 Mich App 152, 158-159; 375 NW2d 370 (1984). In fact, the parties cannot

---

Clearly a sentence beyond statutory limits is invalid. A sentence within statutory limits may also be invalid on a number of grounds. It is invalid if the sentencing court relies on constitutionally impermissible considerations, such as the defendant's constitutionally infirm prior convictions, or improperly assumes a defendant's guilt of a charge which has not yet come to trial, or the court fails to exercise its discretion because it is laboring under a misconception of the law, or conforms the sentence to a local sentencing policy rather than imposing an individualized sentence. More recently, this Court has held invalid sentences which do not comply with essential procedural requirements such as failure to utilize a "reasonably updated" presentence report or to provide the defendant and his counsel with the opportunity to address the court before sentence is imposed.

See also *People v McKee,* 167 Mich App 258, 262; 421 NW2d 655 (1988) (concurrent sentences imposed where sentences should be consecutive); *People v Daniels,* 69 Mich App 345, 350; 244 NW2d 472 (1976) (incorrect understanding of the applicable consecutive sentencing statute); *People v Mauch,* 23 Mich App 723, 730-731; 179 NW2d 184 (1970) (sentence based on erroneous perception of the habitual offender statute).

contest the trial court's sentencing considerations once it begins pronouncing sentence. See *People v Westbrook*, 188 Mich App 615, 617; 470 NW2d 495 (1991); *People v Davis*, 142 Mich App 114, 117-118; 369 NW2d 272 (1985). Accordingly, especially where the information was discoverable before sentencing, defendant cannot impeach the validity of his sentence by submitting additional information after sentencing. Accord *United States v Lopez*, 26 F3d 512, 520 (CA 5, 1994); *United States v Fraley*, 988 F2d 4, 7 (CA 4, 1993). Should the reverse be true, the finality of the sentencing decision would be imperiled by constant attempts to seek out and submit additional facts after sentencing.

In the present case, defendant makes no claim that the information submitted after sentencing was unobtainable before sentencing. Thus, by failing to submit it before sentencing, defendant waived his right to have the information considered. Further, even if the information was not available until after sentencing, the information could not affect the validity of defendant's sentence because it was cumulative to the information given the trial court before sentencing.[9]

---

[9] The sentencing report detailed defendant's disability. Further, at sentencing, defendant's mother argued that, because of defendant's disability, his crime was more like adolescent sexual exploration than predatory adult pedophilia. Defendant's mother also claimed that defendant's fragility and need for close personal and professional attention makes him especially susceptible to internalizing the negative behavior he may experience in prison. Moreover, defense counsel referred to defendant's low-average IQ, repressed mental age, and the psychologists' reports before the court evidencing the shared conclusion that incarceration would undo "all the good that the Wybrechts have done with Rob." In short, the trial court was apprised of defendant's condition before sentencing. The additional information simply added support to defendant's arguments regarding defendant's disability and the psychological damage that prison may cause him.

Additionally, the lower court erred in resentencing defendant on the basis of new information regarding the likelihood of early parole for defendant. Parole eligibility is not a valid sentencing consideration. See *People v Fleming*, 428 Mich 408; 410 NW2d 266 (1987); *People v Abbett*, 199 Mich App 334; 501 NW2d 177 (1993), rev'd on other grounds 443 Mich 863 (1993). Thus, after-acquired information concerning the likelihood of early parole for defendant is not a viable grounds for resentencing.

C

Defendant also claims that his original sentences were invalid because the senior probation agent incorrectly characterized defendant as a pedophile. We disagree and hold that a sentence is not invalid because probation agents and a defendant's psychologists use undisputed facts to draw conflicting conclusions about the defendant's character. In *People v Greene*, 116 Mich App 205, 210; 323 NW2d 337 (1982), rev'd on other grounds 414 Mich 896 (1982), this Court found no error in the trial court's failure to resolve a claimed inaccuracy in the presentence report where the defendant's objection "was not to an alleged factual inaccuracy in the report but to a conclusion drawn from the undisputed facts."

Similarly, the parties in this case dispute the psychological conclusion to be drawn from the undisputed facts. Here, a probation agent concluded that defendant is a pedophile because he sexually molested a young child and is likely to repeat his misconduct. On the other hand, defendant's psychologists opined that, despite the child molestation, defendant lacks the mental capacity to be a pedophile. Neither

party disputes the facts underlying either conclusion. Under these circumstances, and especially when the trial court was alerted to the dispute before pronouncing sentence, the failure to resolve the issue does not invalidate defendant's sentence.

D

Defendant also claims that the trial court was authorized to resentence because of the stay issued before defendant was transferred from jail to prison. Again, we disagree. In *In re Richards*, 150 Mich 421, 426; 114 NW 348 (1907), our Supreme Court reiterated that "a trial court cannot set aside a valid sentence and impose a new and different one, after the defendant has been remanded to jail to await the execution of the sentence." Accord *People v Dotson*, 417 Mich 940 (1983); *People v Barfield*, 411 Mich 700, 701-703; 311 NW2d 724 (1981); *Meservey, supra* at 226.

After pronouncing its original sentences, the lower court ordered defendant into the immediate custody of corrections officials. Defendant was in jail awaiting transfer to prison when the trial court issued the stay. In fact, the stay directed that defendant remain in jail until further order of the court. Under these circumstances, the sentencing judge lost his authority to resentence defendant because, by sending defendant to jail, "[the] authority over the prisoner had passed out of his [the judge's] hands by his own order." *Meservey, supra* at 226; accord *In re Jenkins, supra* at 368; *Chivas, supra* at 395-396; *Bingaman, supra* at 158-159.

III

Finally, defendant contends that, even if the lower court lacked authority to resentence, the original sentence is disproportionate under *Milbourn, supra.* However, this issue is not properly before us. MCR 7.207; *Therrian v General Laboratories, Inc*, 372 Mich 487, 490; 127 NW2d 319 (1964); *People v Gallego*, 199 Mich App 566, 575-576; 502 NW2d 358 (1993). Nevertheless, defendant's original sentences were within the correctly scored guidelines' range. Accordingly, the sentences are presumptively proportionate. *People v Broden*, 428 Mich 343, 354-355; 408 NW2d 789 (1987); *People v Cutchall*, 200 Mich App 396, 410; 504 NW2d 666 (1993).

Defendant has not overcome the presumption of proportionality. *People v Bailey (On Remand)*, 218 Mich App 645, 647; 554 NW2d 391 (1996); *People v Price*, 214 Mich App 538, 548; 543 NW2d 49 (1995). While baby-sitting, defendant repeatedly molested his five-year-old nephew. Contrary to defendant's claim that his actions were akin to childlike sexual exploration, there is evidence that he told the victim that he would go to jail if the victim told anyone about the sexual abuse. Thus, defendant knew his actions were not only wrong, but criminal. Furthermore, although prison may have a profound effect on defendant, considerations about defendant's welfare do not overcome the traumatic and permanent damage defendant's severe misconduct had on his young victim. Additionally, the sentencing guidelines, within which defendant was sentenced at the very low end, do not fully reflect the gravity of defendant's serious crimes because two first-degree criminal sexual conduct charges were dismissed pursuant to plea bargain. See

*People v Brzezinski (After Remand)*, 196 Mich App 253, 256; 492 NW2d 781 (1992); *People v Duprey*, 186 Mich App 313, 318; 463 NW2d 240 (1990). Under these circumstances, it strongly appears that defendant's sentences are proportionate to the seriousness of the offenses and the offender. *People v Houston*, 448 Mich 312, 322; 532 NW2d 508 (1995); *People v Girardin*, 165 Mich App 264, 266; 418 NW2d 453 (1987).

The order granting defendant's motion for resentencing is reversed and defendant's sentences of ninety days in jail and five years' probation are vacated. Defendant's original sentences of concurrent terms of two to fifteen years' imprisonment are reinstated.

D. B. Leiber, J., concurred.

T. G. Kavanagh, J. *(dissenting)*. I respectfully dissent.

It is undisputed that defendant suffers from fetal alcohol syndrome (FAS), an irreparable birth defect characterized by a cluster of symptoms caused by organic brain damage resulting from in utero exposure to alcohol, and from attention deficit disorder. Defendant has an overall IQ of eighty-four. The presentence investigation report (SIR) notes that defendant's adoptive parents knew of his FAS disability when they adopted him and "have provided him with a structured, caring environment and he has flourished." The SIR states that defendant had no prior record, had no history of alcohol or drug abuse, finished high school in a special-education program, and was employed as a dishwasher at the time of the alleged offenses. Under "Mental and Physical Health," the SIR states:

Fetal Alcohol Syndrome with Attention Deficit Disorder/Hyperactive (psychotropic medication as needed).

The physician's [sic] treating the Respondent for this condition is Dr. Jerry Walden . . . . Prescribed medication Cylert in the amount of 75 milligrams per day. Dr. Paul Estenson, Clinical Psychologist . . . . Dates of treatment: 9/90-3/91, 7/94-Present. Respondent is currently involved in mental health counseling with the above mentioned doctor and psychologist.

The SIR, which was prepared by probation officer Gordon Martin, recommended three years' probation, the first 120 days on tether, and outpatient therapy:

This is a first offense committed by this 21-year-old youngster and although it is among the more serious offenses set by statue [sic], the writer requests that the court consider the psychological evaluation prepared on 10/4/94 by clinical psychologist Paul Estenson . . . .

If we are to salvage this young individual, the writer feels that prison is not the answer. Most certainly, it is not to say that he should go unpunished, however, it should be in a way that gains (as such) in his behavior would not be disturbed. Therefore the writer is respectfully requesting that as an alternative to prison that he be placed on the home tethering program with psychotropic medication and continue his involvement in outpatient therapy.

In an addendum to the SIR, senior probation agent Thomas Hiller stated:

I vehemently disagree with Mr. Martin's recommendation in this matter.

Wybrecht could [] a threat to the general community; as a pedophile, Wybrecht will be difficult to cure and it is well documented that pedophiles may seek multiple victims.

This case alone deserves a prison sentence, both as punishment, and to, hopefully, serve as a deterrent to Wybrecht's further predations.

> I note that Mr. Martin did not score ov 13, however, I sus-
> pect that the victim will certainly suffer some emotional
> harm as the result of the crime and the court can properly
> consider such a probability (See People v. Girardin [165
> Mich App 264; 418 NW2d 453 (1987)]).
>
> I would recommend that the court sentence the Respon-
> dent to a three and a half year minimum, and recommend
> that, as a condition of parole, the Respondent complete a
> sex offender treatment program.

At the February 9, 1995, sentencing hearing,
defense counsel urged the court to follow officer Mar-
tin's recommendation of three years' probation with
120 days on tether and outpatient therapy.

The court sentenced defendant to two to fifteen
years' imprisonment.

### I

Defendant's motion for a stay of proceedings was
granted by order dated February 22, 1995. The prose-
cution did not seek leave to appeal the trial court's
grant of defendant's motion.

On March 10, 1995, defendant filed his responsive
memorandum in support of the motion for resentenc-
ing and an evidentiary hearing, and an amended
motion for a stay of execution and resentencing and
an evidentiary hearing. Defendant argued that the
court at sentencing had relied on inaccurate informa-
tion regarding defendant's prognosis and rehabilita-
tive potential, i.e., the conclusions of senior probation
agent Hiller that defendant is a pedophile who "will
be difficult to cure and it is well documented that
pedophiles may seek multiple victims." Defendant
argued that Hiller's statement was a "professional
clinical diagnosis which [Hiller] was not qualified or
sufficiently informed to make"; that the probation

statute, MCL 771.14(2)(a), (d); MSA 28.1144(2)(a), (d), does not provide for such diagnoses by agents and, in fact, confines all opinions of agents to factual information contained in the SIR; and that, as such, defendant's right to due process in sentencing was violated. Defendant stressed that four doctors with Ph.D.'s who were experienced in work with sex offenders and the developmentally disabled had submitted written statements that Hiller's statement was without support and that pedophilia is not a proper diagnosis in light of defendant's low level of mental functioning and the results of quantitative testing of defendant. Defendant argued that the court could properly modify the original sentence, which was invalid, in that a valid sentence is one imposed as an exercise of fully informed discretion. Defendant further argued that "[t]he inquiry is really whether a trial court's misapprehension of Defendant's, mental capabilities, coupled with the probation department's characterization of Defendant as a 'pedophile' requiring incarceration supports modification of the sentence."

Defendant attached to his amended motion several documents that were not before the court at the original sentencing, including affidavits of Drs. Estenson, Ann Streissguth, Michael Abramsky, and Steven Miller that responded to agent Hiller's description of defendant as a pedophile. The affidavits stated that pedophilia was an improper diagnosis and that imprisonment was not only inappropriate, but would be damaging and counterproductive for defendant. Dr. Streissguth, the director of the Fetal Alcohol and Drug Unit of the University of Washington School of Medicine, averred in pertinent part:

2. I am very familiar with Robert Wybrecht and his family and their capacity as part of a follow-up group of over 400 individuals with FAS. I also saw Rob as a three year-old child while I was lecturing at the University of Michigan on FAS. He had been diagnosed with FAS at that time.

3. Rob is outstanding within the follow-up group as having achieved nearly unprecedented life goals such as his regular job as a dishwasher, no previous court intervention, and no observable secondary psychological problems. We attribute this to an uncommonly positive, carefully structured home environment and the efforts of his family to provide him with the necessary support services.

4. Rob's brain damage causes him to function at a socialization level approximating that of a 9-11 year old child. He "lives in the moment", and has little capacity for long-term independent planning or projection. He also [] memory problems, as the area of the brain which affects this function is especially vulnerable to the brain damage which affected him in utero.

5. These qualities provide an indication that if inappropriate sexual activity did occur between Rob and a younger child, it was limited in nature. Further, it is my opinion that if it did take place, it was situational and experimental only. In my opinion, a clinical diagnosis of pedophilia is not likely to be supportable in Rob's case, given his level and mode of intellectual functioning.

6. Over the past years, I have conducted research involving identification, assessment and treatment of FAS prisoners in the state penal system.

7. As a result of this experience, as well as my academic training, my opinion is that any prison is totally inappropriate for Robert Wybrecht. The general objective of punishment will not be met because this individual cannot and will not intellectually connect past conduct with present consequences. . . . [I]n all probability, [he] will never have an acceptable understanding of the reasons he is incarcerated.

8. Rehabilitation will be virtually impossible because if therapy is available at all, it would most likely be cognitive-type group therapy. This would almost certainly have little

positive impact on Mr. Wybrecht and could actually be counterproductive. For an FAS individual, traditional group therapy generally causes additional confusion in a setting which will already be virtually impossible for him to function in. The cognitive ability to relate cause and effect is difficult for Mr. Wybrecht due to his brain damage.

9. Persons with FAS become targets for mental, physical, and sexual victimization within the prison population. A specific concern is the high likelihood that he will be victimized by sexual predators.

10. If he survives prison, which is questionable, the qualities which have caused him to be an example of how well FAS children can function if raised in a structured and affectionate environment, will be lost or severely minimized.

11. Further, it is very likely that he will learn and internalize deviant sexual behaviors in the prison setting. Incarcerating Mr. Wybrecht makes it much more probable that he will be a repeat sex offender than placing him back into his parents' home.

12. If the objective of the court is to insure community safety, i.e., that this activity is not repeated, and to mete out appropriate punishment, the only feasible placement is in the structured, closely monitored home environment.

Dr. Miller, a licensed clinical psychologist and certified consulting forensic examiner who worked for the Recorder's Court Psychiatric Clinic Certified Forensic Facility before entering private practice, averred that work with sex offenders made up a significant portion of his practice and that he had specifically evaluated and treated developmentally disabled sex offenders. Dr. Miller's affidavit stated in pertinent part:

[T]he activity which gave rise to this offense does not meet the clinical diagnostic criteria for pedophilia. Pedophilia affects a limited sub-group of sex offenders. Among other things, this Defendant does not have sufficient emotional maturity and mental ability to be diagnosed as a pedophile.

6. Further, pedophilia is characterized by premeditation and planning. After review of this Defendant's records, it is clear that the organic brain damage caused by Fetal Alcohol Syndrome excludes the possibility of such premeditation and planning. This Defendant's memory limitations rule out the persistent sexual attraction to children outside the home which is characteristic of fixated pedophiles.

Also attached to defendant's amended motion for resentencing was a copy of an article appearing in the February 1995 issue of *Criminal Defense Newsletter*: *Chiaroscuro: Sex Offenders and the Clear but Obscure Possibility of Parole*. The article stated that those convicted of criminal sexual conduct crimes are being paroled at a slower rate than other offenders despite the fact that the Michigan Department of Corrections' recidivism statistics for criminal sexual conduct offenders reflect a success rate that is second highest for all offenders (79.6 percent were complete successes according to recently released MDOC statistics). The article also noted that sex offender therapy is often unavailable in Michigan prisons and stated that "[t]he critical point to be made here is that the actual term served may differ (sometimes greatly) from the minimum term originally imposed by the court, due to parole decisions."

Defendant also submitted an affidavit of Gordon Martin, the probation officer who completed the SIR, which stated that in reaching his conclusions concerning an appropriate sentence recommendation for defendant, he reviewed court records and psychological evaluations and also interviewed defendant in person. Martin further averred that, to his knowledge, no one else in the probation office interviewed defendant and that he continued to believe that his initial rec-

ommendation of three years' probation and outpatient therapy was appropriate.

The court sentenced defendant to concurrent sentences of five years' probation, the first ninety days in the county jail, with credit for fifty days served. Defendant was ordered, upon release from jail, to spend the next 150 days on the tether program, and to undergo outpatient therapy as recommended by the probation department. The court also ordered that defendant was to have no contact with the victim.

II

The prosecution argues that defendant's second sentence should be vacated because defendant's original sentence was valid and the trial court thus lacked authority to resentence defendant. However, the prosecution cites no cases involving a stay of proceedings and does not address defendant's argument that the court had authority to resentence because defendant had not begun to serve his sentence.

A stay of proceedings suspends the execution of punishment and enforcement of a judgment. *In re Dana Jenkins*, 438 Mich 364, 368-369; 475 NW2d 279 (1991); 4 CJS, Appeal and Error, § 408, p 452 and § 438, p 472.[1] In this regard, we note that the trial court's order granting defendant's motion for a stay of proceedings also ordered that defendant "shall be kept in the county jail." Assuming arguendo that

---

[1] As a general rule, in the absence of a statute to the contrary, the court has power temporarily to postpone or to stay the execution of its sentence pending proceedings to obtain a review of the judgment, or for any other valid purpose incidentally necessary in the administration of justice. 24 CJS, Criminal Law, § 1547, pp 136-137.

defendant had thus begun to serve his sentence, where an invalid sentence has been imposed, the court may grant resentencing for legally cognizable reasons, even though the illegal sentence has been partly executed. *People v Erwin*, 212 Mich App 55, 63; 536 NW2d 818 (1995).

Both parties agree that a trial court has authority to resentence a defendant where the original sentence was invalid. *People v Whalen*, 412 Mich 166, 170; 312 NW2d 638 (1981); MCR 6.429(A). The Staff Comment to MCR 6.429(A) states that "invalid sentence" "refers to any error or defect in the sentence or sentencing procedure that entitles a defendant to be resentenced or to have the sentence changed."

Although I cannot agree fully with defendant's argument that defendant was originally sentenced on the basis of "inaccurate" information, the circuit court had information before it at the resentencing that supports the argument that defendant's original sentence was not individualized. *Whalen, supra* at 170. Because the court had stayed proceedings, it could properly grant resentencing. *Erwin, supra*.

I would affirm.