*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD DUANE JOHNSTON,

        Defendant-Appellant.

UNPUBLISHED
April 14, 2022

No. 357256
Jackson Circuit Court
LC No. 11-005131-FC

Before: GLEICHER, C.J., and K. F. KELLY and PATEL, JJ.

PER CURIAM.

Ten years ago, Donald Duane Johnston pleaded guilty to one count of first-degree criminal sexual conduct (CSC-I), arising from sexual penetration of two children under age 13. Johnston had been convicted of the same offense in 1990. In exchange for his 2012 plea, the prosecutor agreed to forego the life-without-parole sentence applicable to repeat CSC-I offenders. Departing from Johnston's sentencing guidelines range, the trial imposed a parolable life sentence.

Despite Johnston's timely request, appellate counsel was not appointed until 2021. We granted Johnston's delayed application for leave to appeal, limiting the question presented to whether his sentence was "invalid and unreasonable." *People v Johnston*, unpublished opinion of the Court of Appeals, entered July 19, 2021 (Docket No. 357256). We now affirm.

## I. BACKGROUND

When offering his 2012 guilty plea, then-57-year-old Johnston admitted that he had digitally penetrated two children of family friends. One girl was five years old, and the other age 6. Johnston's 1990 conviction for CSC-I also involved the sexual assault of a young child. He served six years in prison for that offense.

As a repeat CSC-I offender, Johnston faced a sentence of "imprisonment for life without the possibility of parole" under MCL 750.520b(2)(c). In exchange for his plea, however, the prosecution agreed to seek sentencing under the more general sentencing provision of subsection

-1-

(2)(a) ("imprisonment for life or for any term of years"). During the guilty plea hearing, the court specifically warned Johnston that he might face a term of life imprisonment at sentencing.

The parties agreed that Johnston's minimum sentencing guidelines range was 126 to 262 months, or 10½ years to 21 years and 10 months. The prosecutor urged the court to depart upward from the sentencing guidelines, emphasizing that she was "hard pressed to find a number that would come up to the correct punishment that the defendant needs for all the crimes that he has committed against children in our community." The prosecutor read aloud from a letter authored by the victim of the 1990 offense describing the profound and lingering emotional trauma associated with Johnston's sexual abuse. The prosecutor argued that the young victims in this case would face the same trauma and deserved to be reassured that Johnston would remain imprisoned for a long time. Johnston did not object to the court's consideration of the letter.

The court sentenced Johnston to imprisonment for life with the possibility of parole, noting that he sexually abused the two young victims "on a number of occasions" and had a criminal history of sexual abuse against very young girls. The court continued, "There's no question in the court's mind that these are acts of a deviant who preys on these young girls . . . . I had the old file pulled and I read through the file also, and I know that the young girl in [the 1990] case was 5 or 6 years of age also." And the court indicated that it had considered the letter presented by Johnston's previous victim as well as an additional allegation involving a three-year-old child that did not go to trial.

> I think that's the whole idea in your picking on these people, Mr. Johnston, that you realize that these people are not only vulnerable but they are individuals that are not probably gonna be able to come into court, talk to the police and elaborate on what it is that you did to them, and so you take advantage of them.
>
> And, of course, with your deviation here that you're only apparently interested in small children, that just adds to the problems that you face, and of course, that the victims face.

The court then explained its rationale for departing from the guidelines, anchoring its reasoning in the facts of the case and Johnston's history of abusing young girls. The court summarized that "[a] long period of incarceration is required, in the court's opinion, to protect the most innocent of young children from this sexual predator who cannot or will not control himself." Johnston would "spend the rest of [his] life in prison," the court concluded, and "it's the intent of the court that you never get out and you never come into contact with young children."

We turn to the single legal question before us: whether Johnston's parolable life sentence is "invalid and unreasonable."

## II. THE PREVIOUS VICTIM'S STATEMENT

Johnston first asserts that the trial court erred by reviewing the file from his 1990 conviction and by considering the victim's letter, which he characterizes as "highly inflammatory, highly improper." He accurately notes that neither the William Van Regenmorter Crime Victim's Rights

Act (CVRA)[1] nor MCR 6.425(D)(2)(c) specifically authorize victims of *previous* crimes to provide statements at sentencing hearings. Allowing the victim of a previous crime to address the trial court about a defendant's current crime, Johnston contends, violates the spirit of the CVRA.

This Court has repeatedly rejected Johnston's argument. "Plainly, the law does not limit victim's impact statements to direct victims." *People v Waclawski*, 286 Mich App 634, 692; 780 NW2d 321 (2009). "Michigan's sentencing system promotes informed, conscientious decision making by providing the parties an almost unlimited opportunity to submit pertinent information before sentencing." *People v Wybrecht*, 222 Mich App 160, 171; 564 NW2d 903 (1997). "[T]he trial judge must bring to bear at the moment of sentencing all the knowledge, experience, and ability available, because the decision made at that moment will be that judge's ultimate ruling." *People v Pfeiffer*, 207 Mich App 151, 158-159; 523 NW2d 640 (1994) (quotation marks and citation omitted). Accordingly, "[e]very effort is made to ensure that the judge has adequate and accurate information upon which to base the sentencing decision." *Id*. (quotation marks and citation omitted). In *People v Albert*, 207 Mich App 73, 74-75; 523 NW2d 825 (1994), we affirmed a sentence after an attorney for a victim of the defendant from a civil case was allowed to address the sentencing court, over the defendant's objection. This Court stated that, even though the attorney was not a "victim" according to statute, "a sentencing court is afforded broad discretion in the sources and types of information to be considered when imposing a sentence, including relevant information regarding the defendant's life and characteristics." *Id*. at 75. See also *Waclawski*, 286 Mich App at 691-692.

The trial court had the discretion to consider the 1990 victim's statement. The statement was particularly pertinent because the circumstances surrounding that crime mirrored those in this case. That Johnston re-offended in precisely the same manner was relevant to at least two sentencing considerations: protecting society and reformation of the defendant. Resentencing on this ground is not required.

Johnston also argues that the trial court relied on inaccurate information. "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). Because he has not identified any inaccurate information on which the trial court relied, we consider his argument abandoned. See *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000) ("A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim.").

## III. THE REASONABLENESS OF THE DEPARTURE SENTENCE

The reasonableness of Johnston's parolable life sentence presents a more difficult question. We begin our analysis by noting that Johnston has not challenged the scoring of his guidelines.

---

[1] MCL 780.751 *et seq.*

Nor did his application raise an argument that the plea was illusory.[2] Although counsel's legal argument on application and appeal are premised on the standards of review described in *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), and *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017) (*Steanhouse II*), we are not convinced those standards necessarily apply.

Had we granted a timely application for leave to appeal, we would have considered whether the sentencing court articulated "a substantial and compelling reason" for the departure sentence based on "objective and verifiable reasons," and whether the sentence imposed was "proportionate to the defendant's conduct and prior criminal history." *People v Smith*, 482 Mich 292, 299-300; 754 NW2d 284 (2008). In 2015, our Supreme Court decided *Lockridge*, 498 Mich at 365, 392, changing the review paradigm. Relevant here, *Lockridge* jettisoned the need for considering "substantial and compelling reasons" for a departure, declaring that "a sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id.* at 392.

In *People v Barnes*, 502 Mich 265, 274; 917 NW2d 577 (2018), the Supreme Court declined to apply *Lockridge* retroactively "to cases on collateral review[.]" Technically, this is Johnston's direct appeal and not a collateral challenge to his conviction or sentence. But his appeal was not open and ongoing in 2015, counseling against *Lockridge*'s retroactive application. See *Barnes*, 502 Mich at 268. Regardless of which review rubric is applied, Johnston's parolable life sentence is neither invalid nor unreasonable.

Ultimately, both *Steanhouse II* and *Smith* instruct that the central issue in a departure sentencing case is whether the departure is proportionate to the offense and the offender. *Steanhouse II*, 500 Mich at 476-477; *Smith*, 482 Mich at 304-305. Under post-*Lockridge* precedent, we review a lower court's determination that a particular sentence is reasonable for an abuse of discretion. *Steanhouse II*, 500 Mich at 471. Similarly, pre-*Lockridge* we reviewed for an abuse of discretion whether the reasons identified by a trial court for a departure were substantial and compelling enough to justify the departure and its length. *Smith*, 482 Mich at 300.

Although *Lockridge* eliminated the need for appellate courts to consider whether the reasons for a departure were "substantial and compelling," the *Smith* Court's method for effectuating proportionality principles remains relevant. Addressing appellate review of departure sentences, the *Smith* Court stated:

---

[2] Johnston's appointed appellate counsel did not file a motion to withdraw the plea in the trial court before filing an application for leave to appeal. Counsel raised three issues in the application in addition to the one we now consider: whether the delayed appeal violated his due process rights, whether the plea was defective under MCR 6.302(B)(2) because the trial court failed to inform him of the necessity of lifetime electronic monitoring, and whether his counsel performed ineffectively by failing to inform him of the lifetime electronic monitoring requirement. The motion panel granted leave only on the issue before us, with Judge JANSEN stating that she would have granted leave on all the issues raised.

-4-

Appellate courts are obliged to review the trial court's determination that a . . . reason exists for departure. Accordingly, the trial court's justification "must be sufficient to allow for effective appellate review." In [*People v Babcock*, 469 Mich 247, 258-259; 666 NW2d 231 (2003)], this Court explained that an appellate court cannot conclude that a particular . . . reason for departure existed when the trial court failed to articulate that reason. Similarly, if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been. [*Smith*, 482 Mich at 304 (citations omitted).]

Johnston has not argued that the sentencing court failed to identify "substantial and compelling" reasons for the departure sentence. We raise the issue only to demonstrate our awareness that this case falls in between *Lockridge* and *Barnes*, and that no published authority charts our appellate review course. But ultimately it does not matter. The sentence was substantively reasonable under pre- and post-*Lockridge* proportionality principles. And the court adequately explained its reasons for departing and the extent of the departure.

The trial court extensively elucidated why it sentenced Johnston to life imprisonment rather than to a term of years with a minimum within the guidelines range. The court observed that the five- and six-year-old victims spent many overnights at Johnston's home as friends of his family, where he abused them over a period of approximately 10 months. The court elaborated that the abuse stopped only when one of the girls informed her father "that the defendant had stuck a finger up her butt and licked her butt and it hurts and she don't want to go over there anymore. And she says this was done while she was asleep and of course, woke her up in the middle of the night." The trial court further reported that the other child-victim said that "defendant would touch her, quote, 'front privates,' unquote, and used his hand. She said it happened more than once but could not remember how many times exactly, which, of course, is consistent with children that are 5 or 6 years old." The trial court characterized Johnston as "a deviant who preys on these young girls," and opined "I don't think you can change," citing his previous conviction of assaulting a young girl, along with an allegation involving abuse of a three-year-old girl.

The trial court specifically explained its reasons for departing from the guidelines as follows:

The court's deviating over the guidelines as the guidelines, in the court's opinion, do not adequately consider that the victims were 5 and 6 years of age at the time of the offenses, and that the victim of the previous criminal sexual conduct first degree was also under 13 years of age. The guidelines do not adequately consider that the defendant took advantage of two girls and their circumstances by sexually abusing them after they had gone to sleep and wakening them by digital penetration on more than one occasion.

The guidelines do not adequately consider in the court's opinion that the defendant is a predator of young girls subjecting them to sexual penetration and/or licking their privates and/or anal area.

The victim on the defendant's previous CSC conviction was a 6[-]year[-] old girl who testified at the preliminary examination on March 12, 1990 that the defendant put his penis in her and had licked her front and bottom, quite similar to what took place here, when he had access to her through babysitting. This victim had also told her mother that her bottom hurt and that she did not want to go see the defendant again as he had done this to her on several occasions.

Guidelines, in the court's opinion, do not adequately consider that the defendant is a sexual deviant who preys on little girls and continues to do so . . . even though 20 years has expired and now we have this new case before us.

A long period of incarceration is required, in the court's opinion, to protect the most innocent of young children from this sexual penetrator who cannot or will not control himself.

All that having been said, and deviating outside the guidelines, the sentence of the court is that you spend the rest of your life in prison . . . . [I]t's the intent of the court that you never get out and you never come into contact with young children.

Johnston argues that the departure sentence was unreasonable because the guidelines range already accounted for predatory conduct in Offense Variable (OV) 10 and the number of penetrations in OV 11. However, the "predatory conduct" considered for OV 10 involves *preoffense* conduct intended to victimize a vulnerable victim, rather than just planning a crime. *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008). MCL 777.40(1)(a) prescribes 15 points for such conduct, but the trial court assessed only 10 points, finding that Johnston "exploited a victim's . . . youth . . . , or a domestic relationship, or . . . abused his or her authority status." MCL 777.40(1)(b). Accordingly, "predatory conduct" as envisioned for OV 10 was not one of the trial court's departure considerations.

OV 11, concerning criminal sexual penetration, was assessed at 25 points for the occurrence of one sexual penetration beyond the one constituting the sentencing offense, rather than 50 points for the occurrence of two or more sexual penetrations. See MCL 777.41(1); MCL 777.41(2)(c). The trial court did not discuss the number of penetrations against the two victims in this case as a part of the justification for the departure.

Most pertinent to Johnston's challenge is his claim that his parolable life sentence is disproportionate to the circumstances of his crime. By pleading guilty, however, he avoided a *nonparolable* life sentence. See MCL 750.520b(2)(c). "Because the Legislature subscribed to the principle of proportionality in developing the sentencing scheme," a legislatively mandated sentence is presumed to be proportionate and valid. *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991). A life sentence with the possibility of parole is less severe than the presumably proportionate nonparolable life sentence dictated by the Legislature.

Although the court's departure explanation predated *Steanhouse II* by five years, the court addressed the factors identified as relevant to proportionality in that case and in *People v Milbourne*, 435 Mich 630; 461 NW2d 1 (1990), including the seriousness of the offense, the

defendant's background, the likelihood of rehabilitation, and the protection of society. The court identified factors not accounted for in the guidelines related to Johnston's exploitation of very young victims, often family friends, while emphasizing the need to protect society from sexual deviancy of the sort demonstrated by Johnston's repeated violations of young girls. As required by *Steanhouse II*, the court rooted its rationale for a departure sentence squarely within " 'the nature of the offense and the background of the offender,' " *Steanhouse II*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 651, by declaring that no more young girls should be exposed to defendant's demonstrated deviancy, thereby establishing by reference to matters of record that its departure was " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse II*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Sima G. Patel